No. 23-50668

# In the United States Court of Appeals for the Fifth Circuit

**BOOK PEOPLE, INCORPORATED; VBK, INCORPORATED, doing business as BLUE WILLOW BOOKSHOP; ASSOCIATION OF AMERICAN PUBLISHERS; AUTHORS GUILD, INCORPORATED; COMIC BOOK LEGAL DEFENSE FUND; AMERICAN BOOKSELLERS ASSOCIATION,**

*Plaintiffs-Appellees,*

v.

**MARTHA WONG, in her official capacity as the Chair of the Texas State Library and Archives Commission; KEVEN ELLIS, in his official capacity the Chair of the Texas State Board of Education, MIKE MORATH, in his official capacity as the Commissioner of the Texas Education Agency,**

*Defendants-Appellants.*

**PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL AND FOR A TEMPORARY ADMINISTRATIVE STAY**

**On Appeal from the United States District Court for the Western District of Texas, Austin Division Case No. 1:23-CV-00858-ADA, Judge Alan Albright**

Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
William Reid Pillifant (admission pending)
**HAYNES AND BOONE, LLP**
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400

**ATTORNEYS FOR PLAINTIFFS-APPELLEES**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

**Case Number and Style**: No. 23-50668, *Book People, Inc., et al. v. Martha Wong, et al.*

1. **Plaintiffs-Appellees**: Book People, Inc., VBK, Inc. d/b/a Blue Willow Bookshop, American Booksellers Association, Association of American Publishers, Authors Guild, Inc., and Comic Book Legal Defense Fund. None of the Plaintiffs-Appellees are a publicly held corporation; no Plaintiff-Appellee has any parent corporation; and no publicly held corporation owns 10 percent or more of any Plaintiff-Appellee's stock.

2. **Counsel for Plaintiffs-Appellees**: Laura Lee Prather, Catherine L. Robb, Michael J. Lambert, and William Reid Pillifant[1] of Haynes and Boone, LLP.

3. **Defendants-Appellants:** Martha Wong, Keven Ellis, and Mike Morath.

4. **Counsel for Defendants-Appellants**: Angela Colmenero, Brent Webster, James Lloyd, Kimberly Gdula, Ryan Kercher, Christina Cella, Amy Pletscher, Ken Paxton, Brent Webster, Lanora C. Pettit, and Ari Cuenin of the Office of the Attorney General.

5. **Amici in District Court**: Educational Book & Media Association, Association of University Presses, Barnes & Noble, Inc., Freedom to Read Foundation, Freedom to Learn Advocates, American Association of School Librarians, and Association of University Presses.

---

[1] Mr. Pillifant's admission is currently pending.

i

6.    **Counsel for Amici in District Court**: Peter D. Kennedy of Graves, Dougherty, Hearon & Moody, P.C.; Everett William Jack, Jr., Celyra Imani Myers, and Linda J. Steinman of Davis Wright Tremaine LLP.

Plaintiffs-Appellees reserve the right to supplement this disclosure with other financially interested persons or entities identified as the appeal progresses.

*/s/ Laura Lee Prather*

Laura Lee Prather

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF CONTENTS....................................................................................iiiii

TABLE OF AUTHORITIES .................................................................................iv

I.    NO EMERGENCY EXISTS ...........................................................................1

II.   BACKGROUND .........................................................................................3

    A.    HB 900 unconstitutionally compels Plaintiffs to review and issue ratings for all books ever sold to public schools and punishes them for refusing to adopt the State's preferred ratings...............................3

    B.    The District Court's partial injunction preliminarily enjoined enforcement of HB 900 against booksellers. .......................................5

III.  ARGUMENT................................................................................................7

    A.    Denying the Motion to Stay maintains the status quo. ........................9

    B.    All four *Nken* factors favor denying the Motion to Stay...................11

        1.    Defendants are not likely to succeed on the merits. ................11

        2.    Defendants will not be irreparably injured without a stay.......19

        3.    A stay of the preliminary injunction would substantially injure Plaintiffs.........................................................................20

        4.    The public interest supports enjoining an unconstitutional law. ...........................................................................................21

IV.   CONCLUSION...........................................................................................21

CERTIFICATE OF SERVICE ...............................................................................23

ECF CERTIFICATION .......................................................................................23

CERTIFICATE OF COMPLIANCE......................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*303 Creative LLC v. Elenis*,
   143 S. Ct. 2298 (2023)....................................................................11, 14, 15, 17

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
   851 F.3d 507 (5th Cir. 2017) ...............................................................14

*Alexander v. United States*,
   509 U.S. 544 (1993)..............................................................................16

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
   78 F.4th 210 (5th Cir. 2023) ...........................................................12, 20

*Ashcroft v. Am. Civil Liberties Union*,
   542 U.S. 656 (2004)............................................................................9, 10

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963)................................................................................16

*Barber v. Bryant*,
   833 F.3d 510 (5th Cir. 2016) ..............................................................8, 10

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
   457 U.S. 853 (1982)..............................................................................18

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018)............................................................................9

*Campbell v. St. Tammany Parish School Board*,
   64 F.3d 184 (5th Cir. 1995) .................................................................18

*Chiras v. Miller*,
   432 F.3d 606 (5th Cir. 2005) ...............................................................18

*Elrod v. Burns*,
   427 U.S. 347 (1976)..............................................................................20

*K.P. v. LeBlanc*,
   729 F.3d 427 (5th Cir. 2013) ...............................................................13

*Louisiana v. Becerra,*
    20 F.4th 260 (5th Cir. 2021) ...............................................................10

*McDonald v. Longley,*
    4 F.4th 229 (5th Cir. 2021) ............................................................7, 19

*Miller v. California,*
    413 U.S. 15 (1973)...............................................................................4

*Morales v. Daley,*
    116 F. Supp. 2d 801 (S.D. Tex. 2000) ...............................................15

*Nken v. Holder,*
    556 U.S. 418 (2009)..........................................................................7, 8

*Opulent Life Church v. City of Holly Springs, Miss.,*
    697 F.3d 279 (5th Cir. 2012) ...............................................13, 20, 21

*Prison Legal News v. Livingston,*
    683 F.3d 201 (5th Cir. 2012) .............................................................14

*Reno v. ACLU,*
    521 U.S. 844 (1997)...........................................................................17

*Rest. L. Ctr. v. U.S. Dep't of Lab.,*
    66 F.4th 593 (5th Cir. 2023) ..............................................................21

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)...........................................................................11

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
    732 F.3d 535 (5th Cir. 2013) .............................................................21

*Texas v. United States,*
    40 F.4th 205 (5th Cir. 2022) ................................................................7

*Texas v. United States,*
    787 F.3d 733 (5th Cir. 2015) .........................................................9, 10

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023) ..............................................................13

*United States v. Arnold*,
 740 F.3d 1032 (5th Cir. 2014) ............................................................15

*United States v. Sindel*,
 53 F.3d 874 (8th Cir. 1995) ...............................................................15

*Virginia v. American Booksellers Ass'n.*,
 484 U.S. 383 (1988)............................................................................11

*W. Virginia State Bd. of Educ. v. Barnette*,
 319 U.S. 624 (1943)............................................................................20

*Ex parte Young*,
 209 U.S. 123 (1908)......................................................................13, 14

**Statutes**

19 TEX. ADMIN. CODE § 239.55 ...............................................................18

H.B. 900, known as the Restricting Explicit and Adult-Designated
 Educational Resources ("READER") Act, codified as TEX. EDUC.
 CODE §§ 33.021, 35.001-002, 35.0021, 35.003-008. ...........................3

TEX. EDUC. CODE § 33.021 ......................................................1, 4, 7, 18

TEX. EDUC. CODE § 35.001..........................................................1, 3, 4

TEX. EDUC. CODE § 35.002.........................................................*passim*

TEX. EDUC. CODE § 35.003........................................................5, 18

TEX. EDUC. CODE § 35.0021 ................................................1, 4, 12, 18

**Other Authorities**

Claire Goodman, *Katy ISD halts all library book purchases, new
 books stored*, HOUSTON CHRONICLE (June 27, 2023)........................12

FED. R. APP. PROC. 8(a)(2)(A).................................................................7

Plaintiffs-Appellees file this Response in Opposition to Defendants' Emergency Motion to Stay Preliminary Injunction Pending Appeal and for a Temporary Administrative Stay ("Response").

## I.  NO EMERGENCY EXISTS

In an effort to stay the enjoinment of an unconstitutional law, Defendants misconstrue the law's effect, misrepresent the narrow nature of the preliminary injunction issued by the District Court, and exaggerate the need for emergency relief when irreparable harm would, instead, be felt by Plaintiffs. House Bill 900 ("HB 900"),[2] a recently enacted law, burdens Plaintiffs and other booksellers, not the government, with the onerous task of reviewing hundreds of thousands of school library books[3] by applying vague definitions and a multi-factor subjective analysis to provide one of three ratings (not mere objective ingredient "labels") for each book—"sexually explicit," "sexually relevant," or "no rating." TEX. EDUC. CODE § 35.002. The law also tasks the Texas State Library and Archives Commission ("TSLAC") and the State Board of Education ("SBOE") with developing "library standards" consisting of a "collection development policy." *Id*. § 33.021.

---

[2] 2023 Tex. Sess. Law Serv. 808 (West). H.B. 900, known as the Restricting Explicit and Adult-Designated Educational Resources ("READER") Act, is codified as Tex. Educ. Code §§ 33.021, 35.001–002, 35.0021, 35.003–008. Dkt. 1–1.

[3] This case is *not* about the regulation of school textbooks or curricular activities. The law applies only to non-curricular library books and excludes textbooks or books "directly related to the curriculum." TEX. EDUC. CODE §§ 33.021(a); 35.001(3).

The District Court preliminarily enjoined only the enforcement of the rating provisions against booksellers (§§ 35.001, 35.002, 35.0021, and 35.003) ("Rating Provisions"), but it did not enjoin the library standards provisions or other provisions concerning review and reporting of certain library materials (§§ 33.021, 35.004–008) ("Library Standards and Review Provisions"). The District Court held that the rating requirements placed on Plaintiffs violated the First and Fourteenth Amendments because they compelled Plaintiffs' speech, were unconstitutionally vague, and functioned as an impermissible prior restraint. Dkt. 43.[4] This partial injunction left in effect the Library Standards and Review Provisions, muting Defendants' cries for emergency relief to "begin" the process of developing library standards to adopt by January 1, 2024, (Mot. at 2–3), especially when on August 31, 2023, the TEA Committee on Instruction considered proposed library standards drafted weeks earlier.[5]

Likewise, the allegations that Plaintiffs seek to "control" statewide policy are false. Mot. at 1–2. As the District Court found, the State controls Plaintiffs by compelling them to publicly adopt government messages with which they disagree and requiring them to undertake the cost-prohibitive task of reviewing and rating

---

[4] "Dkt. [#]" refers to District Court docket entries. "ECF No. [#]" refers to Fifth Circuit docket entries.

[5] August-September 2023 Committee on Instruction ("This item provides the opportunity for the committee to discuss a draft of the proposed collection development standards and provide feedback to TSLAC.").

*every* page of *every* book they have *ever* sold to public schools, which will, among other things, cause the demise of independent booksellers.[6] But resisting these constitutional infringements will bar Plaintiffs from selling *any* books to *any* Texas public school, causing immediate constitutional, economic, and reputational harm. Either way, a stay will cause Plaintiffs imminent, irreparable harm.

To preserve Plaintiffs' constitutional and economic rights until this Court makes a final determination—and to maintain the status quo—Defendants' Motion to Stay ("Mot.") should be denied and the administrative stay issued be lifted.

## II.     BACKGROUND

### A.     HB 900 unconstitutionally compels Plaintiffs to review and issue ratings for all books ever sold to public schools and punishes them for refusing to adopt the State's preferred ratings.

On June 13, 2023, HB 900 was signed. It was scheduled to take effect on September 1, 2023 and applies to the 2023-24 school year. HB 900 §§ 6–7. The law compels "library material vendors,"[7] such as Plaintiffs, to review all "library material"[8] previously sold to a "school district or open-enrollment charter school,"

---

[6] Dkt. 43 at 10; Dkt. 1–2 ¶ 16; Dkt. 1–3 ¶ 16; Dkt. 1–4 ¶ 20.

[7] A "library material vendor" is defined as "any entity that sells library material to a public primary or secondary school in this state." TEX. EDUC. CODE § 35.001(1) ("bookseller"). This could apply broadly to wholesalers, distributors, independent bookstores, online retailers, e-book sellers, publishers, authors, and others.

[8] "Library material" is not defined in the law but, read literally, could include books, reference works, magazines, newspapers, and audio and audiovisual materials, in both physical and digital formats (hereinafter, "books").

or which they wish to sell in the future, that remain in "active use" and are not "directly related to the curriculum." They must provide a rating for each book: "sexually relevant,"[9] "sexually explicit,"[10] or "no rating." TEX. EDUC. CODE §§ 33.021(a), 35.001(1), 35.001(3), 35.002(a). These ratings are not akin to objective product labels of dangerous ingredients as argued by the State. (Mot. at 15–16). Instead, while making a *single* rating for each book, the bookseller must review each passage and undertake a multi-part "contextual analysis" that requires it to "weigh and balance" a multitude of factors while considering (undefined) "community standards" but not accounting for age differences of the readers. *Id*. § 35.0021(b). As of September 1, 2023, a bookseller is barred from selling library materials to a public school unless and until it has issued all the required ratings. *Id*. § 35.002(a), (b).[11]

---

[9] "Sexually relevant material," which students can only access "outside the school library" with written parental consent, is defined as material that "describes, depicts, or portrays sexual conduct, as defined by Section 43.24, Penal Code." *Id*. § 35.001(3).

[10] "Sexually explicit material," which must be recalled from school libraries and is barred from being sold to schools, includes the above definition of "sexually relevant material" *and* requires that the material be presented "in a way that is patently offensive, as defined by Section 43.21, Penal Code." *Id*. §§ 33.021(a); 35.001(2). Notably, the definition does *not* require consideration of the literary, artistic, scientific or political value of the work as required to meet the obscenity definition under *Miller v. California*, 413 U.S. 15 (1973).

[11] Although the State claims that booksellers will not be harmed until April 1, 2024, "a plain reading of the legislation reveals that vendors are prohibited from selling books" between September 1, 2023, and April 1, 2024. Dkt. 43 at 13.

After a bookseller submits its initial ratings (based on its attempted application of the unconstitutionally vague statutory definitions), those ratings are publicly posted (as the bookseller's ratings) on TEA's website. *Id.* § 35.002(e). If TEA believes that a bookseller has "incorrectly" rated a book, it may notify the bookseller of the agency's "corrected rating," and the bookseller *must* change their rating to reflect TEA's "corrected rating," which will be published on TEA's website, once again, as the bookseller's rating. *Id.* § 35.003(a), (b), (c). If a bookseller does not acquiesce to TEA's revised ratings on every book, the agency will place the bookseller on a public blacklist on TEA's website and school districts will be barred from purchasing *any* books from them unless and until they adopt the revised ratings on every single book at issue.[12] *Id.* § 35.003(c), (d), (e).

## B.  The District Court's partial injunction preliminarily enjoined enforcement of HB 900 against booksellers.

On July 25, 2023, Plaintiffs filed a Complaint (Dkt. 1) and Motion for Preliminary Injunction (Dkt. 6), seeking to enjoin HB 900 because it violated the First and Fourteenth Amendments. On August 16, 2023, Defendants filed a Motion to Dismiss and Response in Opposition to Plaintiffs' Motion for Preliminary Injunction. Dkt. 19.

---

[12] "There is no dispute that the only way to regain the ability to sell library material to public schools is to submit a list of ratings compliant with the TEA's ratings." Dkt. 43 at 9.

The District Court held in-person hearings on the Motions on August 18, 2023 and August 28, 2023. Dkt. 27, 32. On August 31, 2023, the TEA Committee on Instruction considered proposed Library Standards that had been drafted weeks earlier.[13] Hours later, during a remote Status Conference, the District Court granted the Motion for Preliminary Injunction, denied the Motion to Dismiss, and orally enjoined the statute before it could take effect on September 1, 2023. Dkt. 36. The District Court also denied Defendants' oral request to stay the preliminary injunction. Dkt. 36. The next day, Defendants filed a Motion for Stay of Proceedings Pending Appeal. Dkt. 37.

On September 18, 2023, the District Court issued a written Order preliminarily enjoining only the Rating Provisions, not the Library Standards and Review Provisions. Dkt. 43. The District Court held that the law likely violates the First and Fourteenth Amendments because it (1) unconstitutionally compels speech, (2) contains several unconstitutionally vague provisions, and (3) is an unconstitutional prior restraint. Dkt. 43. The District Court also found that the law subjects Plaintiffs to multiple forms of irreparable harm and that the balance of harms and public interest favors an injunction preserving the status quo. Dkt. 43 at 54–58. The partial nature of the injunction carefully preserved the State's ability to formulate library standards and review books without putting the economic burden

---

[13] *See* fn. 5, *supra.*

on businesses. The Order did not address Defendants' Motion for Stay of Proceedings Pending Appeal.[14] Dkt. 37.

The next day, the District Court held a remote hearing to discuss the issuance of a Scheduling Order, where the Court confirmed that the law was not enjoined in its entirety.[15]

On September 25, 2023, this Court entered an administrative stay pending further order from the Court. ECF No. 31.

## III.   ARGUMENT

A stay pending appeal is "an extraordinary remedy." *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022). A stay is "an intrusion into the ordinary processes of administration and judicial review" and "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Here, enjoining the unconstitutional Rating Provisions does *not* harm Defendants. *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021) (enjoining First Amendment violations is "really no harm at all"). However, if a stay is issued, Plaintiffs would face significant constitutional impingements, economic harm

---

[14] Defendants' Motion herein is premature because the District Court has not ruled on Defendants' Motion for Stay (Dkt. 37). *See* FRAP 8(a)(2)(A).

[15] At the Court's request, on September 21, 2023, Plaintiffs submitted a letter motion requesting that the District Court clarify its Order and enjoin §§ 33.021(a) and 33.021(d)(2)(A)(ii), which include terms held to be unconstitutionally vague and that are inextricably intertwined with other unconstitutional provisions. Dkt. 49. The District Court has not yet ruled on the letter motion.

(including the risk of independent booksellers going out of business)[16] and reputational loss caused by implementing the unconstitutional book rating system. Conversely, because the injunction has carved out the State's ability to set library standards and review library materials, Defendants will feel no irreparable harm.

Defendants "bear the burden of showing that the circumstances justify" a stay. *Id*. at 433–34. They cannot meet this burden. In determining whether to stay a preliminary injunction pending appeal, courts consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties; and (4) where the public interest lies.

*Id.* at 434 (the "*Nken* factors"). The first two factors are the "most critical." *Id*. at 435. The "maintenance of the status quo" is also an "important consideration in granting a stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978)). Because all four *Nken* factors favor Plaintiffs and a preliminary injunction would maintain the status quo, the Motion to Stay should be denied.

---

[16] Dkt. 1–2 ¶ 16; Dkt. 1–3 ¶ 14–16; Dkt. 1–4 ¶ 20; Dkt. 43 at 10, 18, 56.

A.    **Denying the Motion to Stay maintains the status quo.**

A preliminary injunction preventing the enforcement of HB 900 maintains the status quo.[17] *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("The 'purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'"). An injunction will ensure that the law as it existed before HB 900's enactment (including not requiring booksellers to rate books) will remain in place until the constitutionality of those provisions can be decided. *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015) (an injunction "maintains the status quo while the court considers the issue")

By contrast, staying the preliminary injunction would radically upend the status quo. Most notably, as the District Court held, Plaintiffs' free speech rights would be infringed. Dkt. 43; *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 671 (2004) (a law should be enjoined when there is the risk of self-censorship and "a serious chill upon protected speech"). Plaintiffs would be immediately prohibited from selling books to public schools because they would be unable to review and rate every book ever sold to a public school, as required. TEX. EDUC. CODE § 35.002(a). To lift the prohibition, Plaintiffs would need to undertake the painstaking process of reviewing and rating hundreds of thousands of books, which would

---

[17] Besides a brief conclusory statement, Defendants fail to explain why or how granting the Motion to Stay would maintain the status quo. Mot. at 3. It does not.

significantly disturb Plaintiffs' businesses and cause economic injury, the re-allocation of significant resources, and the potential closure of independent booksellers throughout Texas. Dkt. 1–2 ¶ 16; Dkt. 1–3 ¶ 14–16; Dkt. 1–4 ¶ 20.  A stay would also require public schools to change the way they store and purchase books and impact public school students' access to books. Under the status quo as it exists now (and has existed for 170 years)—without Rating Provisions—*none* of these impingements are present.

Stay requests have been denied in similar cases to prevent a new law from going into effect. *See, e.g., Barber*, 833 F.3d. at 511–12 (preliminary injunction "maintain[ed] the status quo in Mississippi as it existed before the Legislature's passage and attempted enactment of [the law]"); *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (enjoining enforcement of a federal mandate before it went into effect maintained the status quo); *Texas v. United States*, 787 F.3d at 768. When a new law—especially one with unconstitutional provisions—has been enjoined, courts should maintain the injunction. *Ashcroft*, 542 U.S. at 670 (an injunction removes risk of "extraordinary harm and a serious chill upon protected speech.").

**B.     All four *Nken* factors favor denying the Motion to Stay.**

    **1.     Defendants are not likely to succeed on the merits.**

        **a.     The District Court has subject-matter jurisdiction over this case.**

            **i.     Plaintiffs have standing and their claims are ripe.**

Plaintiffs, who will be subject to the law because they or their members have sold books to Texas public schools and intend to continue selling books to Texas public schools,[18] have standing because they will face "imminent" constitutional and financial harm if the law takes effect.[19] The enjoined Rating Provisions violate Plaintiffs' right to distribute books and be free from compelled speech. There is a "credible threat" that the State will compel Plaintiffs' speech both by requiring them to provide initial ratings for all books ever sold to public schools and to adopt the State's "corrected ratings," whether agreed to or not. TEX. EDUC. CODE §§ 35.002(e); 35.003(c); *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023) (standing based on "credible threat" that government would "seek to compel speech"); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

---

[18] Dkt. 1–2 ¶¶ 3–7, Dkt. 1–3 ¶¶ 3–5, 27; Dkt. 1–4 ¶¶ 5; Dkt. 1–5 ¶ 4. Dkt. 1–6 ¶¶ 5–6; Dkt. 1–7 ¶ 5.

[19] Plaintiffs also have standing to bring First Amendment claims on behalf of third parties, including other "library material vendors" and students. Dkt. 1 §§ 87–92; *see Virginia v. American Booksellers Ass'n.*, 484 U.S. 383, 392–93 (1988).

As for economic damages, the law has already caused at least one Plaintiff to lose business from Katy ISD, which stopped purchasing library books because of the law.[20] If the Rating Provisions are implemented, Plaintiffs will face additional imminent and non-speculative economic harm. Dkt. 1 ¶¶ 7–8. The law requires Plaintiffs to conduct the burdensome and costly task of reviewing each book cover to cover considering "each instance" of a mention of sexual conduct and providing ratings for *all* books ever sold to school districts, which will cause them to divert extensive resources and valuable time from their normal operations.[21] TEX. EDUC. CODE §§ 35.0021, 35.002(a), (b). This will likely cost between $200 and $1,000 per book and between $4 million and $500 million total to read and rate all books already sold to public schools (Dkt. 1–3 ¶¶ 14–16) and could cause the demise of Texas independent booksellers.[22] *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 235 (5th Cir. 2023) (plaintiffs "sustain a concrete injury when they are forced to divert time and resources away from their regular" jobs). Until the ratings are performed, a task Plaintiffs cannot do, they will be barred from selling any books to public schools because, among other things, they do not have complete records of all books "previously sold to a district or school." TEX. EDUC. CODE § 35.002(a); *id.*

---

[20] *See* Claire Goodman, *Katy ISD halts all library book purchases, new books stored*, HOUSTON CHRONICLE (June 27, 2023); Dkt. 1 ¶ 36; Dkt. 1–3 ¶ 24.
[21] Dkt. 1–2 ¶¶ 16–17; Dkt. 1–3 ¶¶ 10, 13–16; Dkt. 1–4 ¶¶ 7, 19-20; Dkt. 1–5 ¶¶ 8–11.
[22] Dkt. 1–2 ¶ 16; Dkt. 1–3 ¶ 16; Dkt. 1–4 ¶ 20.

("[E]conomic harm—like damage to one's business interest—is a quintessential Article III injury.")).

Plaintiffs' injuries are fairly traceable to Defendants because they are tasked with enforcing the rating provisions, and Defendants have not provided "compelling contrary evidence" that they will not enforce the law. *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023); Dkt. 43 at 22. An injunction will redress Plaintiffs' injuries because they will no longer need to review and rate books, can resume selling books to public schools, and will not be compelled to speak against their will.

Plaintiffs' claims are ripe because they raise "pure questions of law" under the U.S. Constitution and no further factual development is required. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 287 (5th Cir. 2012) (constitutional challenge was ripe because it raised "pure questions of law").

### ii.    Defendants are not entitled to sovereign immunity.

The *Ex parte Young* exception to sovereign immunity applies because Plaintiffs sued Defendants in their official capacity seeking injunctive relief for violations of their constitutional rights. 209 U.S. 123, 160 (1908); *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (sovereign immunity is overcome when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution"); Dkt. 43 at 25–

13

26. The *Ex parte Young* exception turns on whether "the state officer, by virtue of his office, has some connection with the enforcement of the act." *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). Defendants do not contest that Defendant Morath, as TEA commissioner, is responsible for collecting ratings, reviewing ratings, notifying booksellers when ratings are overridden, and posting lists of ratings and recalcitrant vendors on TEA's website and that Defendant Wong, as TSLAC chair, and Defendant Ellis, as SBOE chair, will impact how books ratings are applied. Dkt. 43 at 25-26.

> **b.    Plaintiffs plausibly allege that HB 900 violates their First and Fourteenth Amendment rights.**

This case concerns vital First Amendment rights—the right to distribute and sell books and to be free from compelled speech. *303 Creative*, 143 S. Ct. at 2312 ("[T]he government may not compel a person to speak its own preferred messages."); *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012) (the distribution of books "is precisely the type of interest at the core of First Amendment protections").

> **i.    Plaintiffs plausibly allege that HB 900 compels speech entitled to First Amendment protection.**

HB 900 compels Plaintiffs to review thousands of books and, consistent with state-mandated criteria, allocate ratings, which are "pure speech" protected under the First Amendment because they "communicate ideas" about the contents of a

book. *303 Creative*, 143 S.Ct. at 2312; § II.A. above. The law also allows the State to overrule Plaintiffs' ratings and requires Plaintiffs to adopt the State's preferred ratings, once again compelling their speech. § II.A. The "corrected" ratings will be posted on TEA's website as Plaintiffs' own ratings. *Id.*; Dkt. 43 at 19 (the law compels speech "in at least two ways"). HB 900 is "textbook compelled speech" because it "impermissibly seeks to compel an individual or corporation to create speech that it does not wish to make" and provides TEA "total, unilateral power to alter any rating with which they disagree." Dkt. 43 at 3, 37.

The law is not an "essential operation of government" because none of the narrow circumstances in which government operations have been recognized as "essential" apply when Plaintiffs are "being asked to disseminate publicly a message with which [they] disagree." *Morales v. Daley*, 116 F. Supp. 2d 801, 816 (S.D. Tex. 2000); *United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014); *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995).

Defendants' commercial speech argument similarly fails because economic interests do not render speech commercial. *See, e.g.*, *303 Creative*, 143 S. Ct. at 2316 (for-profit websites were entitled to First Amendment protection; speakers do not "shed their First Amendment protections by employing the corporate form to disseminate their speech"). The unsubstantiated allegations that this case is akin to a "product label" (Mot. at 15) blindly ignores the complex and subjective

determinations demanded by HB 900's rating requirements, which are a far cry from the factual, objective information provided on nutrition labels. § II.A. above; Dkt. 43 at 4.

### ii.    Plaintiffs plausibly allege that HB 900 is an unconstitutional prior restraint.

The law is an unconstitutional prior restraint because it allows the government to prohibit all *future* attempts to sell books rated "sexually explicit" to schools with no opportunity to appeal final determinations or have them reviewed judicially. Dkt. 43 at 49–54; *Alexander v. United States*, 509 U.S. 544, 550 (1993) (prior restraints forbid communications "in advance of the time that such communications are to occur"); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 61, 66 (1963) (allowing a non-judicial body to label constitutionally protected works as "objectionable" without a judicial determination is an unconstitutional "system of prior administrative restraints"). The District Court correctly found this to be an unconstitutional prior restraint. Mot. at 49–54.

### iii.    Plaintiffs plausibly allege that HB 900 is unconstitutionally vague.

HB 900 is unconstitutionally vague because it contains unclear definitions, contradictions, confusing requirements, unworkable standards, and leaves booksellers with many unanswered questions. Dkt. 43 at 42–49. The regime is based on entirely subjective "community standards" (which vary throughout the state), a

multi-prong definition of "sexually explicit material" and "sexually relevant material" (with no guardrail for works with literary, artistic, scientific or political value), and a mandate for booksellers to "consider the full context" of books that are in "active use" but not part of the curriculum. Dkt. 43 at 42–49. The law "provides no bright line" in determining whether books should be rated as "sexually explicit," necessitating complex legal analysis "that hundreds, if not thousands, of attorneys who work as prosecutors wrestle with." Dkt. 43 at 5. It also cautioned that by failing to incorporate the *Miller* test, the law "results in nothing more than a highly personal and subjective test [that] is unconstitutionally vague."[23] Dkt. 43 at 45.

### iv.  HB 900 does not implicate the government speech doctrine.

Defendants raise two red herrings—both are frivolous. First, the government speech doctrine is inapplicable because the law requires private entities and individuals, such as Plaintiffs, *not* the government, to review books and issue ratings, which "communicate ideas" about the contents of books. *303 Creative*, 143 S.Ct. at 2312 (websites that "communicate ideas" receive full First Amendment protection). Both the initial ratings and "corrected ratings" will be published on TEA's website

---

[23] Defendants disingenuously claim that the law "tracks *Miller*" (Mot. at 12), even though the critical third prong of *Miller* is absent. Dkt. 43 at 44–45; *Reno v. ACLU*, 521 U.S. 844, 873–74 (1997) (the third prong of the *Miller* test "critically limits the uncertain sweep of the obscenity definition"). The law also fails, under *Miller*, to specify what community standards or ages of students should be considered. Dkt. 43 at 5–6, 45–47.

*as Plaintiffs' speech*, not that of the government. TEX. EDUC. CODE §§ 35.0021, 35.002(e), 35.003(b)(1), 35.003(c); Dkt. 43 at 28–31 (the government performs no role in the rating requirements of § 35.0021).

It is irrelevant that schools may remove library books that are vulgar or educationally unsuitable because Plaintiffs have not challenged those provisions nor has the trial court enjoined those provisions. Mot. at 11. The typical latitude afforded to the government to set school curriculum does not apply because the law only applies to school library books, *not* textbooks or similar books "directly related to the curriculum." TEX. EDUC. CODE §§ 33.021(a); 35.001(3). School libraries provide access to information "beyond the instructional day and school year." 19 TEX. ADMIN. CODE §§ 239.55(b)(5), 239.55(e)(5).[24] Because the law applies only to non-curricular decisions made in school libraries, cases concerning textbooks and curriculum decisions, such as *Chiras v. Miller,*[25] are inapplicable. Mot. at 12; Dkt. 43 at 30. Indeed, "The Supreme Court has drawn a sharp distinction between cases involving textbooks and library books." *Id.*

---

[24] Further, as the District Court concluded, the required recall of "sexually explicit" books (§ 35.002(b)) is not government speech because the *removal* of books is subject to First Amendment scrutiny. *See* Dkt. 43 at 30–31; *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (a municipal actor's decision "to remove books" from shelves implicates the First Amendment); *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184, 189 (5th Cir. 1995) (a book removal decision is subject to First Amendment scrutiny).

[25] 432 F.3d 606, 613 (5th Cir. 2005), which concerned "mandatory, curricular textbooks," does not apply. Dkt. 43 at 30.

### v.      The public forum analysis does not apply.

Second, the public forum analysis has no role in this case because Plaintiffs do not seek to speak in a government owned or controlled space. Dkt. 43 at 31. Plaintiffs are being asked to rate books at their own business with their own personnel at their own costs. Plaintiffs assert "a right to be free from compelled speech and a right to offer and distribute books without unconstitutionally vague censorship," *not* "an absolute right to having all or even any of their books reach shelves of public-school libraries in Texas." Dkt. 43 at 32. Cases that concern the ability of schools to limit *student* speech in *school-related* activities (Mot. at 13) are "not instructive" because HB 900 restricts the activities of *private* booksellers, such as Plaintiffs, *outside* the school setting. Dkt. 43 at 32.

### 2.      <u>Defendants will not be irreparably injured without a stay.</u>

The second *Nken* factor also favors Plaintiffs because Defendants will suffer "really no harm at all" by being prevented from enforcing provisions of a law that violate the First Amendment, especially because the partial injunction permits the State to move forward with developing library standards provisions and reviewing and reporting of library materials. *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021); Dkt. 43 at 57–58. Defendants' allegation that the State and state officials "always have an interest in enforcing their laws" (Mot. at 18) is not persuasive when the District Court held that the law's rating requirements are likely unconstitutional.

The government lacks "any interest in enforcing a regulation that violates federal law." *All. for Hippocratic Med.*, 78 F.4th at 251. Indeed, state officials are not "beyond reach of the Constitution." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

Despite Defendants' claims that they will be unable to "protect children" (Mot. at 18–19) because of the injunction, the State still has "substantial latitude in determining what should be allowed in public schools and school libraries." Dkt. 43 at 58. This issue here is whether the State can require third parties to rate books, not whether the State has an interest in evaluating the content of books in public school libraries. Dkt. 43 at 21.

### 3.   A stay of the preliminary injunction would substantially injure Plaintiffs.

The third *Nken* factor also favors Plaintiffs because a stay would cause deprivations of First Amendment rights (a paradigmatic irreparable harm) and unrecoverable economic damages. Dkt. 43 at 54–57.

If the law takes effect, *vis-a-vis* Plaintiffs, their constitutional rights will be violated, causing clear irreparable injury. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Opulent Life Church*, 697 F.3d at 295 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

Although constitutional injuries alone justify denying the stay request, HB 900 will also cause Plaintiffs to incur "astronomical" economic damages in attempting to comply with rating requirements. *See* § III.B.1.a.i above; Dkt. 43 at 55; *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) ("[N]onrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm.").

### 4.     The public interest supports enjoining an unconstitutional law.

The last *Nken* factor also strongly favors Plaintiffs because enjoining an unconstitutional law is "always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013); *see also Opulent Life Church*, 697 F.3d at 298 ("[I]njunctions protecting First Amendment freedoms are always in the public interest.").

## IV.   CONCLUSION

This, Defendants' fourth attempt to have an unconstitutional law go into effect, should be rejected. The District Court's well-reasoned and well-crafted injunction impacts only the novel rating regime and correctly balances preventing irreparable harm to Plaintiffs' First Amendment rights while preserving the State's ability to set library standards and review books. A stay would upend the status quo and harm the public interest. Plaintiffs respectfully request that the Court deny the Motion to Stay and lift the administrative stay.

Dated: October 2, 2023

Respectfully submitted,

*/s/ Laura Lee Prather*

Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
William Reid Pillifant (admission pending)
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFFS-APPELLEES**

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2023, I electronically transmitted the attached document to the Clerk of the Court of the 5th Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Laura Lee Prather*
Laura Lee Prather

## ECF CERTIFICATION

I hereby certify that (i) required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; (iii) the document has been scanned for viruses using the most recent version of Windows Defender and is free of viruses; and (iv) the paper document will be maintained for three years after the mandate or order closing the case issues, pursuant to 5th Cir. R. 25.2.9.

*/s/ Laura Lee Prather*
Laura Lee Prather

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that:

1.     This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,197 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.2.

2.     This response complies with Fed. R. App. P. 27(d)(1)(E), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*/s/ Laura Lee Prather*
Laura Lee Prather