No. 23-50668

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

BOOK PEOPLE, INCORPORATED; VBK, INCORPORATED DOING BUSINESS AS BLUE WILLOW BOOKSHOP; ASSOCIATION OF AMERICAN PUBLISHERS; AUTHORS GUILD, INCORPORATED; COMIC BOOK LEGAL DEFENSE FUND; AMERICAN BOOKSELLERS ASSOCIATION,

*Plaintiffs-Appellees,*

v.

MARTHA WONG, IN HER OFFICIAL CAPACITY AS THE CHAIR OF THE TEXAS STATE LIBRARY AND ARCHIVES COMMISSION; KEVIN ELLIS, IN HIS OFFICIAL CAPACITY THE CHAIR OF THE TEXAS STATE BOARD OF EDUCATION; MIKE MORATH, IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE TEXAS EDUCATION AGENCY,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

**BRIEF FOR *AMICUS CURIAE* TEXAS STATE REPRESENTATIVE JARED PATTERSON IN SUPPORT OF APPELLANTS**

ROBERT HENNEKE
rhenneke@texaspolicy.com
CHANCE WELDON
cweldon@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700

# CERTIFICATE OF INTERESTED PERSONS

No. 23-50668

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

BOOK PEOPLE, INCORPORATED; VBK, INCORPORATED DOING BUSINESS AS BLUE WILLOW BOOKSHOP; ASSOCIATION OF AMERICAN PUBLISHERS; AUTHORS GUILD, INCORPORATED; COMIC BOOK LEGAL DEFENSE FUND; AMERICAN BOOKSELLERS ASSOCIATION,

*Plaintiffs-Appellees,*

v.

MARTHA WONG, IN HER OFFICIAL CAPACITY AS THE CHAIR OF THE TEXAS STATE LIBRARY AND ARCHIVES COMMISSION; KEVIN ELLIS, IN HIS OFFICIAL CAPACITY THE CHAIR OF THE TEXAS STATE BOARD OF EDUCATION; MIKE MORATH, IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE TEXAS EDUCATION AGENCY,

*Defendants-Appellants.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Amicus Curiae | Texas State Representative Jared Patterson |
|---|---|
| Counsel for Amicus Curiae Texas State Representative | Robert Henneke |

| | |
|---|---|
| Jared Patterson | Chance Weldon<br>Texas Public Policy Foundation<br>901 Congress Avenue<br>Austin, Texas 78701 |
| Plaintiffs-Appellees | Book People, Incorporated<br><br>VBK, Incorporated doing business as Blue Willow Bookshop<br><br>Association of American Publishers<br><br>Authors Guild, Incorporated<br>Comic Book Legal Defense Fund<br><br>American Booksellers Association |
| Counsel for Plaintiffs-Appellees | Laura Lee Prather<br><br>Michael Lambert<br><br>Catherine Lewis Robb<br><br>Haynes & Boone, L.L.P.<br>600 Congress Avenue, Suite 1300<br>Austin, Texas 78701 |
| Defendants-Appellants | Martha Wong, in her official capacity as the Chair of the Texas State Library and Archives Commission<br><br>Kevin Ellis, in his official capacity as the Chair of the Texas State Board of Education |

|  | Mike Morath, in his official capacity as the Commissioner of the Texas Education Agency |
|---|---|
| Counsel for Defendants-Appellants | Ken Paxton<br>Attorney General of Texas<br><br>Brent Webster<br>First Assistant Attorney General<br><br>Lanora C. Pettit<br>Principal Deputy Solicitor General<br><br>Kateland R. Jackson<br>Assistant Solicitor General<br><br>Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548 |

*/s/Chance Weldon*
CHANCE WELDON
*Counsel for Amicus Curiae*
*Texas State Representative*
*Jared Patterson*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................... ii

TABLE OF AUTHORITIES ................................................................... vi

INTEREST OF AMICUS ......................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 2

ARGUMENT ............................................................................................ 3

I.   READER TARGETS A REAL PROBLEM OF EXPLICIT MATERIALS IN SCHOOL LIBRARIES .......................................... 3

II.  THE FIRST AMENDMENT DOES NOT PREVENT TEXAS FROM SETTING STANDARDS FOR SCHOOL LIBRARIES OR KEEPING PARENTS INFORMED .................... 5

III. IF READER'S DIRECT RESTRICTIONS ON VENDORS ARE ENJOINED OR DECLARED UNENFORCEABLE, THE VENDORS HAVE NO STANDING FOR FURTHER RELIEF ............................................................................................ 8

CONCLUSION ......................................................................................... 9

CERTIFICATE OF SERVICE ................................................................ 10

CERTIFICATE OF COMPLIANCE ....................................................... 11

# TABLE OF AUTHORITIES

*Cases:*                                                                                          *Page(s):*

*Bethel Sch. Dist. v. Fraser*,
    478 U.S. 675 (1986) ........................................................................ 6

*Board of Education v. Pico*,
    457 U.S. 583, 102 S. Ct. 2799 (1982) ................................................ 6

*Chiras v. Miller*,
    432 F.3d 606 (5th Cir. 2005) ............................................................ 6

*Contender Farms, L.L.P. v. United States Dep't of Agric.*,
    779 F.3d 258 (5th Cir. 2015) ............................................................ 8

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477, 130 S. Ct. 3138 (2010) ................................................ 8

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ........................................................................ 6

*United States v. Am. Library Ass'n*,
    539 U.S. 194 (2003) .................................................................... 6, 7

*Regulations:*

Tex. Educ. Code § 33.021 ................................................................................ 2
Tex. Educ. Code §§ 35.001-.008 ..................................................................... 2

*Other Authorities:*

ABC 13 Houston, *Katy ISD Parents Demand Removal of 'Pornographic' Book in Schools*, YouTube (Nov. 16, 2021), https://tinyurl.com/4kxbbjvp ................................................ 5

*Adult Material, Race-Based Lessons, and Anti-Parent Activity in Schools*, Texas Public Policy Foundation (last updated Feb. 28, 2023), https://tinyurl.com/26e3accw .................... 5

Christina Aguayo, *'Pornographic' Book Assigned to 14-Year-Olds at Eastlake High Upsets Parents*, KLFY (Dec. 15, 2021) https://tinyurl.com/3vkm2ens ................................................. 4

Claire Osborn, *Williamson County Gives Millions in Federal Money to Schools After Delay Over Books*, Austin American Statesman (Dec. 22, 2021), https://tinyurl.com/37rf7nux ........................................................... 4

Gabriela Vidal, *'Call Me Max': A Children's Book About a Transgender Boy Stirs Controversy at Eanes ISD*, CBS Austin (Mar. 10, 2021), https://tinyurl.com/6kfv37ju ...................... 5

George M. Johnson, *All Boys Aren't Blue* 266 (Farrar et al. eds. 2020), https://tinyurl/com/27fdsc3n .......................................... 4

Hillary Hickland, *The Price of Freedom: Parents Must Remain Vigilant on School Library Materials*, The Cannon (Feb. 2, 2023), https://tinyurl.com/3yrzvds3 ....................................... 4, 5

Reena Advani & Rachel Treisman, *Banned Books: Author George M. Johnson on the Need to Tell All People's Stories*, NPR (Oct. 25, 2022), https://tinyurl.com/4vj83fmw ....................................................... 4

Shannon Ayres, *Plano ISD Board Meeting Speech*, YouTube (Sep. 6, 2023), https://tinyurl.com/27kpsd4b .................................. 5

# INTEREST OF AMICUS[1]

Amicus Texas State Representative Jared Patterson has represented Texas House District 106 since 2019. During his tenure, Rep. Patterson has fought against the sexualization of children through leading local reforms and authoring state policy regarding explicit library material in public schools.

As relevant here, Rep. Patterson is the author of H.B. 900, the R.E.A.D.E.R. Act (Restricting Explicit & Adult-Designated Educational Resources). As the author of the legislation at issue in this case, Rep. Patterson presents a unique voice that could be helpful to this Court in rendering its decision.

---

[1] Undersigned counsel for *amicus curiae* certify that this brief was not authored in whole or in part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amicus* and their counsel have contributed money for this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Sexually explicit and pornographic materials have found their way into public school libraries. In response, Texas passed the Restricting Explicit and Adult-Designated Educational Resources Act ("READER"), 88th Leg., R.S., ch. 808, 2023 Tex. Sess. Law Serv. 2539, (H.B. 900) (codified at Tex. Educ. Code §§ 33.021, 35.001-.008).

While portions of READER applying to vendors were held unconstitutional and enjoined below, Amicus writes to note that the core of READER was not and should not be enjoined. In particular, the district court: (1) largely[2] upheld the state's definition of "sexually explicit material," (2) upheld the state's ability to require public officials to adopt standards for public school libraries, (3) upheld the requirement that schools publish a list of sexually explicit materials, and (4) upheld

---

[2]    The court held that the use of "patently offensive" was unconstitutionally vague, but did not enjoin the rest of the definition. Excising the vague term "patently offensive" from the definition, the statute is now limited to "sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." Tex. Pen. Code, Section 43.25. No one can reasonably dispute the clarity of those terms.

READER's prohibition on checking out explicit materials to children without parental consent. That judgment should be affirmed.

Nothing in the First Amendment prevents the state from adopting standards for its own officials to keep pornographic materials out of public schools, or from requiring that schools give parents notice of what is being provided to their children. Moreover, because these core provisions of READER apply solely to government officials—not to the private book vendors in this case—the vendors cannot take advantage of this Court's clear precedents on standing for regulated parties. As such, regardless of whether the vendors have standing to challenge the portions of READER that regulate private vendors, they lack standing to challenge the core provisions of READER. There is no stand-alone right to have pornographic materials purchased by public schools.

Therefore, the district court's decision to leave the core of READER in place should stand.

## ARGUMENT

### I. READER TARGETS A REAL PROBLEM OF EXPLICIT MATERIALS IN SCHOOL LIBRARIES

It is an incontrovertible fact that students in Texas schools have been exposed to age-inappropriate and pornographic materials through

3

their school libraries. While concerns about "book bans" and accusations of sexual hysteria have swept the nation, it is impossible to deny that graphic sexual content has been available to children in some Texas school libraries.

As an example, in Round Rock ISD, the book *All Boys Aren't Blue*, was available for students to check out and read. Claire Osborn, *Williamson County Gives Millions in Federal Money to Schools After Delay Over Books*, Austin American-Statesman (Dec. 22, 2021), https://tinyurl.com/37rf7nux. Proponents of the book claim that it is liberating for young children, especially minority children and those who are LGBTQ+, to read. Reena Advani & Rachel Treisman, *Banned Books: Author George M. Johnson on the Need to Tell All People's Stories*, NPR (Oct. 25, 2022), https://tinyurl.com/4vj83fmw. While such claims can be debated, it is undeniable that the book is sexually explicit in nature. For example, the book contains graphic depictions of anal sex. George M. Johnson, *All Boys Aren't Blue* 266 (Farrar et al. eds. 2020) *available at* https://tinyurl.com/27fdsc3n at *13.

Other libraries in Texas carry the same book or similar books. *See, e.g.*, Christina Aguayo, *'Pornographic' Book Assigned to 14-Year-Olds at*

*Eastlake High Upsets Parents*, KLFY (Dec. 15, 2021), https://tinyurl.com/3vkm2ens; Hillary Hickland, *The Price of Freedom: Parents Must Remain Vigilant on School Library Materials*, The Cannon (Feb. 2, 2023), https://tinyurl.com/3yrzvds3; Gabriela Vidal, *'Call Me Max': A Children's Book About a Transgender Boy Stirs Controversy at Eanes ISD*, CBS Austin (Mar. 10, 2021), https://tinyurl.com/6kfv37ju; ABC 13 Houston, *Katy ISD Parents Demand Removal of 'Pornographic' Book in Schools*, YouTube (Nov. 16, 2021), https://tinyurl.com/4kxbbjvp; Shannon Ayres, *Plano ISD Board Meeting Speech*, YouTube (Sep. 6, 2023), https://tinyurl.com/27kpsd4b; see also *Adult Material, Race-Based Lessons, and Anti-Parent Activity in Schools*, Texas Public Policy Foundation (last updated Feb. 28, 2023), https://tinyurl.com/26e3accw. READER is a good faith attempt to address this problem.

## II. THE FIRST AMENDMENT DOES NOT PREVENT TEXAS FROM SETTING STANDARDS FOR SCHOOL LIBRARIES OR KEEPING PARENTS INFORMED

READER primarily attempts to respond to these issues by (1) placing restrictions on government officials; and (2) placing restrictions on book vendors that choose to sell to school libraries. While reasonable minds may differ about scope of the state's power to place conditions on

private vendors, there can be no reasonable dispute that the state has authority to regulate its own officials.

Generally, the speech clause of the First Amendment does not restrict the state's right to speak on its own behalf. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). In the context of public schools, states enjoy broad discretion to determine curricula and the contents of their libraries. See *Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005). While a plurality of the Supreme Court held in *Board of Education v. Pico* 457 U.S. 853, 102 S. Ct. 2799 (1982), that public school library collection decisions could trigger some First Amendment scrutiny if based on political content, "all Members of the Court…acknowledged that the school board ha[d] the authority to remove books [from the school library] that [were] vulgar." *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 684 (1986) (discussing *Pico*).

The Supreme Court applied a similar approach to federal funding programs for public libraries. In *United States v. Am. Library Ass'n*, 539 U.S. 194 (2003), the Court evaluated a federal requirement that public libraries seeking federal funding install pornography filters on their computers as a condition for receiving those funds. The filter requirement

6

largely tracked the standards at issue in this case. To receive funds the library had to filter "'visual depictions' that constitute 'obscenity' or 'child pornography,' and…protect[] against access by minors to 'visual depictions' that are 'harmful to minors.'" *Id. at* 201. The Library Association objected that this requirement placed an unconstitutional condition on the exercise of free speech. The Court rejected that argument, explaining that "public libraries have traditionally excluded pornographic material from their other collections" *Id*. at 212. It was therefore not unconstitutional to expect similar treatment of internet content. *Id*.

The same is true here. READER requires that state officials create standards to keep pornography and other explicitly sexual materials away from children in public school libraries—where such materials should have never been allowed in the first place. These modest requirements on government officials do not violate the First Amendment.

## III. IF READER'S DIRECT RESTRICTIONS ON VENDORS ARE ENJOINED OR DECLARED UNENFORCEABLE, THE VENDORS HAVE NO STANDING FOR FURTHER RELIEF

Finally, a brief discussion of standing is in order. In addition to the core elements of READER—which apply to government officials—READER also directly regulates vendors.

Contrary to the position of the state in this case, Amicus does not dispute the vendors' standing to challenge the provisions of READER that directly regulate them. To the contrary, this Court has been clear that a party who is the object of a regulation has standing to challenge it—full stop. *Contender Farms, L.L.P. v. United States Dep't of Agric.*, 779 F.3d 258, 266-67 (5th Cir. 2015). That is because even a minor "increased regulatory burden typically satisfies the injury in fact requirement." *Id.*

Nor does Amicus argue that a challenge to the provisions that directly regulate vendors would not be ripe. This Court has been clear that facial claims are ripe the moment the regulation is passed. *Id.* at 267-68. We "normally do not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490, 130 S. Ct. 3138, 3151 (2010).

These protections for pre-enforcement review are important not only for the plaintiffs here, but for parents, families, property owners, and even the state of Texas when they file lawsuits to challenge government overreach in other cases at the local, state, and federal level. Amicus therefore concedes that the vendors have a right to challenge the restrictions in READER that directly regulate *them* and asks that this Court not take the state's invitation to erode well-established standing doctrine.

However, Amicus agrees with the state that the vendors lack standing to seek *further* relief. The district court enjoined the provisions of READER that directly regulate vendors. To the extent that judgment is upheld, all that is left of READER are the mandates pertaining to government officials. *Contender Farms* does not support any challenge to those provisions.

## CONCLUSION

For the forgoing reasons this Court should, at a minimum, allow the core provisions of READER that regulate government conduct to stand.

Respectfully submitted,

*/s/ Chance Weldon*
ROBERT HENNEKE
TX Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
TX Bar No. 24076767
cweldon@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

*Counsel for Texas State Representative Jared Patterson*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Chance Weldon*
CHANCE WELDON

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1,620 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font size 14.

*/s/Chance Weldon*
CHANCE WELDON
