No. 23-50668

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕱𝖎𝖋𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

**BOOK PEOPLE, INCORPORATED; VBK, INCORPORATED, doing business as BLUE WILLOW BOOKSHOP; ASSOCIATION OF AMERICAN PUBLISHERS; AUTHORS GUILD, INCORPORATED; COMIC BOOK LEGAL DEFENSE FUND; AMERICAN BOOKSELLERS ASSOCIATION,**

*Plaintiffs-Appellees,*

v.

**MARTHA WONG, in her official capacity as the Chair of the Texas State Library and Archives Commission; KEVEN ELLIS, in his official capacity the Chair of the Texas State Board of Education; MIKE MORATH, in his official capacity as the Commissioner of the Texas Education Agency,**

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
Case No. 1:23-CV-00858-ADA, Judge Alan Albright

**BRIEF OF PLAINTIFFS-APPELLEES**

Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
William Reid Pillifant
**HAYNES AND BOONE, LLP**
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400

**ATTORNEYS FOR
PLAINTIFFS-APPELLEES**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

**Case Number and Style**: No. 23-50668, *Book People, Inc., et al. v. Martha Wong, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

1. **Plaintiffs-Appellees**: Book People, Inc., VBK, Inc. d/b/a Blue Willow Bookshop, American Booksellers Association, Association of American Publishers, Authors Guild, Inc., and Comic Book Legal Defense Fund. None of the Plaintiffs-Appellees are a publicly held corporation; no Plaintiff-Appellee has any parent corporation; and no publicly held corporation owns 10 percent or more of any Plaintiff-Appellee's stock.

2. **Counsel for Plaintiffs-Appellees**: Laura Lee Prather, Catherine L. Robb, Michael J. Lambert, and William Reid Pillifant of Haynes and Boone, LLP.

3. **Defendants-Appellants:** Martha Wong, Keven Ellis, and Mike Morath.

4. **Counsel for Defendants-Appellants**: Angela Colmenero, Brent Webster, James Lloyd, Kimberly Gdula, Ryan Kercher, Christina Cella, Amy Pletscher, Ken Paxton, Brent Webster, Lanora C. Pettit, Ari Cuenin, Kateland R. Jackson, and Coy Westbrook of the Office of the Attorney General.

5. **Amicus**: State Representative Jared Patterson.

6. **Counsel for Amicus**: Robert Henneke and Chance Weldon of the Texas Public Policy Foundation.

7. **Amici in District Court**: Educational Book & Media Association, Association of University Presses, Barnes & Noble, Inc., Freedom to

Read Foundation, Freedom to Learn Advocates, American Association of School Librarians, and Association of University Presses.

8.   **Counsel for Amici in District Court**: Peter D. Kennedy of Graves, Dougherty, Hearon & Moody, P.C.; Everett William Jack, Jr., Celyra Imani Myers, and Linda J. Steinman of Davis Wright Tremaine LLP.

Plaintiffs-Appellees reserve the right to supplement this disclosure with other financially interested persons or entities identified as the appeal progresses.

*/s/ Laura Lee Prather*
Laura Lee Prather
Attorney of record for Plaintiffs-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The Court has set this case for oral argument on November 29, 2023.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................iv

TABLE OF CONTENTS...................................................................................v

TABLE OF AUTHORITIES ............................................................................ viii

INTRODUCTION ..............................................................................................1

JURISDICTIONAL STATEMENT ........................................................................4

STANDARD OF REVIEW ..................................................................................5

ISSUES PRESENTED.........................................................................................6

STATEMENT OF THE CASE..............................................................................7

I.      Factual Background ...............................................................................7

        A.      Passage of HB 900 and its requirements for Plaintiffs. ......................7

        B.      HB 900's requirements for Defendants................................................12

II.     The District Court enjoins the enforcement of HB 900's rating
        requirements, finding them to be unconstitutional in at least three
        ways. ...................................................................................................14

III.    This Court grants an administrative stay of the preliminary
        injunction. ..........................................................................................15

SUMMARY OF THE ARGUMENT .....................................................................16

ARGUMENT ..................................................................................................19

I.      Plaintiffs have established federal court jurisdiction. ..................................19

        A.      Plaintiffs have Article III standing to challenge HB 900..................19

                1.      Plaintiffs establish injury-in-fact. ............................................20

                        a.      Plaintiffs show injury-in-fact under *Speech
                                First*..................................................................................20

           b.     Plaintiffs show injury-in-fact because HB 900 causes imminent constitutional, reputational, and economic harm. ...............................21

     2.     Plaintiffs' injuries are fairly traceable to Defendants. ..................................................................26

     3.     Plaintiffs' injuries will be redressed by enjoining Defendants from enforcing HB 900.........................................30

B.    Plaintiffs' claims are ripe. ..................................................31

C.    Defendants are not entitled to sovereign immunity because the *Ex Parte Young* exception applies.................................34

II.    The District Court correctly held that Plaintiffs are likely to succeed on the merits because HB 900 is unconstitutional.........................37

A.    HB 900 is "textbook compelled speech" because it requires Plaintiffs to speak when they would prefer not to and express government messages with which they disagree or face punishment. .................................................37

     1.     HB 900 compels Plaintiffs to speak in at least two ways.....................................................................37

     2.     *303 Creative* and established Supreme Court precedent demand that HB 900 be enjoined. ...........................39

     3.     HB 900 impermissibly compels Plaintiffs to violate their First Amendment rights as a condition of obtaining a government benefit. .............................................40

B.    HB 900 is unconstitutionally vague. .................................42

C.    HB 900 is an unconstitutional prior restraint. ...................................47

     1.     HB 900 prohibits the distribution of constitutionally protected works without procedural safeguards. ....................47

     2.     HB 900 is an unconstitutional prior restraint under *Bantam Books* and *Southeastern Promotions, Ltd.* .................49

III.   Defendants' attempts to circumvent First Amendment
       protections are unavailing. ...............................................................50

       A.    The government speech doctrine does not apply. ...............50

       B.    The misplaced public forum analysis does not apply to
             speech by private individuals and entities outside of the
             school setting. ....................................................................53

       C.    The commercial speech doctrine does not apply. ..............54

             1.    The "essential operation of government" doctrine
                   does not apply. ..........................................................54

             2.    Plaintiffs' speech is not commercial. .........................54

IV.    The District Court correctly held that Plaintiffs will suffer
       irreparable constitutional, economic, and reputational injuries
       unless HB 900 is enjoined. ............................................................55

V.     The District Court correctly held that the balance of equities and
       public interest weigh heavily in favor of enjoining an
       unconstitutional law. .....................................................................57

VI.    This Court should deny the Emergency Motion to Stay and lift
       the administrative stay while it decides this appeal to maintain
       the status quo. ...............................................................................58

CONCLUSION .........................................................................................59

CERTIFICATE OF SERVICE ...............................................................61

ECF CERTIFICATION ..........................................................................61

CERTIFICATE OF COMPLIANCE .......................................................62

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023)..................................................................*passim*

*ACLU v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004) ...................................44

*Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017) ........................................................27, 35

*Alexander v. United States*,
509 U.S. 544 (1993)..................................................................47

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
78 F.4th 210 (5th Cir. 2023) (Petitions for Cetiorari filed
Sept. 12, 2023, docketed Oct. 16, 2023)....................................*passim*

*Amawi v. Pflugerville Indep. Sch. Dist.*,
373 F. Supp. 3d 717 (W.D. Tex. 2019) ............................................41

*Ashcroft v. Am. Civil Liberties Union*,
542 U.S. 656 (2004)..................................................................58

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963)..................................................................49, 51

*Barber v. Bryant*,
833 F.3d 510 (5th Cir. 2016) ........................................................58

*Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*,
518 U.S. 668 (1996)..................................................................41

*Bernard v. Gulf Oil Co.*,
619 F.2d 459 (5th Cir. 1980), *aff'd*, 452 U.S. 89 (1981)............................48, 49

*Braidwood Mgmt., Inc. v. EEOC*,
70 F.4th 914 (5th Cir. 2023) ........................................................31

*Chiu v. Plano ISD,*
    339 F.3d 273 (5th Cir. 2003) .............................................................47

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019) .............................................................36

*City of Chicago v. Morales,*
    527 U.S. 41 (1999).............................................................................37

*Coates v. Cincinnati,*
    402 U.S. 611 (1971)...........................................................................45

*Consumer Data Indus. Ass'n v. Tex. through Paxton,*
    No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023) ..............29

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
    710 F.3d 579 (5th Cir. 2013) ......................................................24, 57

*Dep't of Commerce v. New York,*
    139 S. Ct. 2551 (2019).......................................................................30

*Elrod v. Burns,*
    427 U.S. 347 (1976)...........................................................................56

*Freedman v. State of Md.,*
    380 U.S. 51 (1965).............................................................................48

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)...........................................................................30

*Gen. Land Office v. Biden,*
    71 F.4th 264 (5th Cir. 2023) .............................................................30

*Ginsberg v. State of N.Y.,*
    390 U.S. 629 (1968).....................................................................17, 48

*Groome Res. Ltd., L.L.C. v. Par. of Jefferson,*
    234 F.3d 192 (5th Cir. 2000) .............................................................33

*Harm v. Lake-Harm,*
    16 F.4th 450 (5th Cir. 2021) ...............................................................5

ix

*Houston Expl. Co. v. Halliburton Energy Servs., Inc.*,
  359 F.3d 777 (5th Cir. 2004) ................................................................5

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*,
  515 U.S. 557 (1995).............................................................39, 40, 59

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952)..............................................................................54

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ...............................................................28

*K.P. v. LeBlanc*,
  729 F.3d 427 (5th Cir. 2013) ...............................................................34

*Lujan v. Def's of Wildlife*,
  504 U.S. 555 (1992)......................................................................19, 29

*Martin v. City of Struthers, Ohio*,
  319 U.S. 141 (1943)..............................................................................37

*Meese v. Keene*,
  481 U.S. 465 (1987)..............................................................................24

*Miller v. California.*
  413 U.S. 15 (1973)......................................................................17, 44

*Missouri v. Biden*,
  No. 23-30445, 2023 WL 6425697 (5th Cir. Oct. 3, 2023), *stayed
  and cert. granted sub nom.*, *Murthy v. Missouri*,
  2023 WL 6935337 (U.S. Oct. 20, 2023)............................................19

*Morris v. Dearborne*,
  181 F.3d 657 (5th Cir. 1999) ...............................................................52

*Ne. Florida Chapter of the Associated Gen. Contractors of Am. v. City
  of Jacksonville*,
  508 U.S. 656 (1993)..............................................................................31

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976)..............................................................................47

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ................................................................31, 56, 57

*Perry v. Sindermann,*
    408 U.S. 593 (1972)..........................................................................................41

*Planned Parenthood of Greater Tex. v. Kauffman,*
    981 F.3d 347 (5th Cir. 2020) (*en banc*) ............................................................5

*Prison Legal News v. Livingston,*
    683 F.3d 201 (5th Cir. 2012) ............................................................21, 23, 37

*Reno v. ACLU,*
    521 U.S. 844 (1997)..........................................................................................44

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ..........................................................................42

*Sanchez v. R.G.L.,*
    761 F.3d 495 (5th Cir. 2014) ..........................................................................31

*Shurtleff v. City of Boston, Massachusetts,*
    596 U.S. 243 (2022)..........................................................................................50

*Sindhi v. Raina,*
    905 F.3d 327 (5th Cir. 2018) ..........................................................................52

*Smith v. Goguen,*
    415 U.S. 566 (1974)..........................................................................................45

*Southeastern Promotions, Ltd. v. Conrad,*
    420 U.S. 546 (1975)....................................................................................48, 50

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ............................................................2, 20, 21, 26

*State, Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.,*
    131 S.W.3d 314 (Tex. App.—Austin 2004, pet. denied) .................................33

*Suitum v. Tahoe Reg'l Planning Agency,*
    520 U.S. 725 (1997)..........................................................................................33

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)...................................................................20

*Tex. All. for Retired Americans v. Scott*,
  28 F.4th 669 (5th Cir. 2022) ..................................................5, 35

*United States v. Arnold*,
  740 F.3d 1032 (5th Cir. 2014) .................................................54

*United States v. Stevens*,
  559 U.S. 460 (2010)...................................................................42

*Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982)...................................................................42

*Wooley v. Maynard*,
  430 U.S. 705 (1977)...................................................................38

*Ex parte Young*,
  209 U.S. 123 (1908)...........................................................2, 16, 34

*Zauderer v. Off. of Disciplinary Counsel of Supreme Court of Ohio*,
  471 U.S. 626 (1985)...................................................................55

**Constitutional Provisions, Statutes, Rules**

U.S.. Const. art. III ...............................................................16, 19

U.S. Const. amend. I .................................................................*passim*

U.S. Const. amend. XIV ........................................................6, 15, 31

13 Tex. Admin. Code
  § 4.2..........................................................................................18
  § 4.2(c)(5) .................................................................................34
  § 4.2(c)(7)(B) ...........................................................................34

48 Tex. Reg. 6291 ......................................................................18

28 U.S.C.
  § 1292........................................................................................4
  § 1331........................................................................................4
  § 1343........................................................................................4

42 U.S.C. § 1983 .................................................................................7, 15

Tex. Educ. Code
    § 28.002(a) ...............................................................................8, 10
    § 33.021 .................................................................................1, 14, 44
    § 33.021(a) ......................................................................8, 9, 18, 27
    § 33.021(c) ...............................................................................27, 36
    § 33.021(d)(2)(A)(ii) ........................................................18, 27, 34
    § 33.021(e) ....................................................................................36
    § 35.001 ...................................................................................1, 9, 14
    § 35.001(1) .................................................................................8, 21
    § 35.001(2) ......................................................................................9
    § 35.001(3) .................................................................................8, 44
    § 35.002 .................................................................................*passim*
    § 35.002(a) ............................................................................*passim*
    § 35.002(b) ...............................................................................25, 38
    § 35.002(b)(2) .................................................................................9
    § 35.002(c) ............................................................................9, 13, 28
    § 35.002(d) ....................................................................................28
    § 35.002(e) ...............................................................13, 23, 28, 51
    § 35.003 .................................................................................*passim*
    § 35.003(a) ...............................................................13, 23, 28, 36
    § 35.003(b) ...............................................................................13, 23
    § 35.003(c) ...............................................................................13, 23, 36
    § 35.003(d) ...............................................................................13, 28
    § 35.003(e) ....................................................................................13
    § 35.004 .................................................................................1, 14, 34
    § 35.005 .................................................................................1, 14, 34
    § 35.006 .................................................................................1, 14, 34
    § 35.007 .................................................................................1, 14, 34
    § 35.008 .................................................................................1, 14, 34
    § 35.0021 ...............................................................................*passim*
    § 35.0021(b) ..................................................................................53
    § 35.0021(c) ...............................................................................12, 45
    § 35.0021(d) ...............................................................................12, 45

Tex. Penal Code
    § 43.01................................................................................................10
    § 43.21..........................................................................................9, 11
    § 43.21(a)(4) ................................................................................9, 11
    § 43.25......................................................................................8, 10, 11

Fed. R. Civ. P. 12(b)(6)...........................................................................4

## Other Authorities

Alejandro Serrano, *Texas lawmakers' attempts to ban school library
    books deemed inappropriate for kids spur confusion - and
    concerns*, TEXAS TRIBUNE (March 31, 2023).....................................45

Douglas Dow, *Motion Picture Ratings*, MTSU: FREE SPEECH CTR.
    (Jan. 1, 2009).....................................................................................51

*Frequently Asked Questions*, ENTERTAINMENT SOFTWARE RATINGS
    BOARD ...............................................................................................51

Restricting Explicit and Adult-Designated Educational Resources
    ("READER") Act, 88th Leg., R.S., ch. 808, 2023 Tex. Sess. Law
    Serv. 2539, (H.B. 900) ...............................................................*passim*

## **INTRODUCTION**

At the heart of this case is a novel statute that compels Plaintiffs against their will to review thousands of school library books and make public statements—attributed to Plaintiffs—rating each book according to vague government-created "sexual content" criteria with which Plaintiffs disagree.

By enacting House Bill 900 ("HB 900"),[1] the State seeks to foist its responsibilities onto Plaintiffs by compelling them to speak in a manner directly at odds with their own beliefs and the U.S. Supreme Court's recent decision in *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023). HB 900 causes a variety of imminent constitutional and economic injuries to private booksellers, including credible threats of compelled speech and violations of Plaintiffs' right to distribute constitutionally protected books, that must be addressed now. In addition to these constitutional harms, this unprecedented statutory mandate will, as a practical matter, severely impact whether independent booksellers can survive in Texas.

This case is decidedly *not* about textbooks, school curriculum, whether *the State* can rate library books, or the eventual library standards that can and will do nothing to change the unconstitutional statutory regime. As the District Court explained: "Nothing in the injunction granted here prevents the state from using

---

[1] 2023 Tex. Sess. Law Serv. 808 (West). H.B. 900, known as the Restricting Explicit and Adult-Designated Educational Resources ("READER") Act, is codified as Tex. Educ. Code §§ 33.021, 35.001–002, 35.0021, 35.003–008. ROA.126-135.

1

viable and constitutional means to achieve the state's goals" of protecting children from obscene content in schools, but the State "abdicat[es] its responsibility to protect children" by forcing "private individuals and corporations into compliance with an unconstitutional law that violates the First Amendment." ROA.757.

The unorthodox law requires the private sector to do the government's bidding to issue book ratings using a "highly contextual, multi-step, fact-intensive analysis" with the "lack of any blueprint" to follow, all the while incurring excessive costs and risks, simply for the opportunity (not a guarantee) to distribute books to public schools. ROA.701, 704, 740. HB 900 also compels Plaintiffs to adopt the State's "corrected" book ratings, even if they are contrary to Plaintiffs' views, which will be published on the internet as Plaintiffs' speech. ROA.130-131.

The District Court correctly held it had jurisdiction because Plaintiffs meet the standing requirements to bring a First Amendment pre-enforcement challenge, *see Speech First, Inc. v. Fenves*, 979 F.3d 319, 333 (5th Cir. 2020), *as revised* (Oct. 30, 2020), the case is ripe for review, and the *Ex Parte Young* exception to sovereign immunity applies. The District Court also correctly found that HB 900's rating requirements feature at least three fundamental constitutional flaws—they compel unwanted speech, require booksellers to make subjective determinations about the content of books based on a "web of unconstitutionally vague requirements," and allow the government to prohibit a wide swath of constitutionally protected material

2

from being disseminated—and preliminarily enjoined those provisions from being enforced. ROA.752, 757. This Court should affirm the preliminary injunction and remand for a trial on the merits.

## <u>JURISDICTIONAL STATEMENT</u>

The District Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343. ROA.20. This Court has jurisdiction over the District Court's grant of injunctive relief and denial of Defendants' Motion to Dismiss as to sovereign immunity under 28 U.S.C. § 1292. This Court does not have jurisdiction over the District Court's denial of Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

A preliminary injunction is reviewed for abuse of discretion, reviewing findings of fact for clear error and conclusions of law *de novo*. *Planned Parenthood of Greater Tex. v. Kauffman*, 981 F.3d 347, 354 (5th Cir. 2020) (*en banc*). A District Court abuses its discretion when it "applies incorrect legal principles." *Id*. at 354. "Clear error" exists only when "the reviewing court based on all the evidence is left with the definitive and firm conviction that a mistake has been committed." *Houston Expl. Co. v. Halliburton Energy Servs., Inc.*, 359 F.3d 777, 779 (5th Cir. 2004); *see also Harm v. Lake-Harm*, 16 F.4th 450, 455 (5th Cir. 2021) (an appellate court cannot "reverse the finding of the trier of fact simply because [it is] convinced that [it] would have decided the case differently").

Standing and sovereign immunity are reviewed *de novo*. *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022).

## ISSUES PRESENTED

1.    Whether Plaintiffs established a justiciable controversy when HB 900 causes imminent constitutional, reputational, and economic injury that can be redressed by enjoining Defendants from enforcing the law.

2.    Whether Plaintiffs established a likelihood of proving at trial that HB 900 violates the First and Fourteenth Amendment when it (a) compels private individuals and entities to engage in speech in which they disagree or face punishment, (b) fails to provide explicit standards for applying the law to avoid arbitrary and discretionary applications, and (c) prevents the dissemination of constitutionally protected works without procedural safeguards.

3.    Whether the District Court abused its discretion by granting a preliminary injunction that (a) restricts Defendants from enforcing a law that (1) compels private speech, (2) functions as a prior restraint, and (3) is unconstitutionally vague; (b) prevents Plaintiffs from being irreparably injured; and (c) is in the public interest.

4.    Whether this Court should deny Defendants' request to stay the preliminary injunction and grant Plaintiffs' request to lift the administrative stay when an injunction would maintain the status quo until this Court decides the appeal.

## STATEMENT OF THE CASE

### I.    Factual Background

### A.    Passage of HB 900 and its requirements for Plaintiffs.

On June 13, 2023, Gov. Greg Abbott signed HB 900. ROA.25. HB 900 applies to the 2023-24 school year and was scheduled to take effect on September 1, 2023. ROA.134. Soon after it was signed, at least one school district, Katy ISD, stopped all library book purchases and placed all incoming books in storage as it awaited the impact of the new law. ROA.26, 323-326. On July 25, 2023, Plaintiffs, a coalition of booksellers, publishers, and authors, filed a Complaint (ROA.14-90.) and Motion for Preliminary Injunction (ROA.98-171.) under 42 U.S.C. § 1983, seeking to enjoin the enforcement of HB 900 to prevent imminent and irreparable injuries. Plaintiffs include Book People, Inc. ("BookPeople"), Texas's largest independent bookstore based in Austin, and VBK, Inc. d/b/a Blue Willow Bookshop ("Blue Willow"), a family-owned and operated bookstore in Houston as well as four organizations—American Booksellers Association, Association of American Publishers, Authors Guild, Inc., and Comic Book Legal Defense Fund.

In order to continue selling library books to public schools, HB 900 requires

"library material vendors,"[2] such as Plaintiffs, to review all "library material"[3] previously sold to a "school district or open-enrollment charter school"[4] that remain in "active use" and are not "directly related to the curriculum" and all books they wish to sell in the future, for any sexual content, rating them as "sexually relevant," "sexually explicit," or "no rating." ROA.126, 128-29, 131; Tex. Educ. Code §§ 33.021(a), 35.001(1), 35.001(3), 35.002(a).[5]

Books rated "sexually relevant" can only be accessed "outside the school library" with written parental consent. ROA.128, 132; § 35.001(3). "Sexually relevant material" is defined as "any communication, language, or material, including a written description, illustration, photographic image, video image, or audio file, other than library material directly related to the curriculum required under Section 28.002(a), that describes, depicts, or portrays sexual conduct, as defined by Section 43.25, Penal Code." ROA.128; § 35.001(3).

Books rated "sexually explicit" must be recalled from public school libraries

_____

[2] A "library material vendor" is defined as "any entity that sells library material to a public primary or secondary school in this state." ROA.128; § 35.001(1) (hereinafter, "bookseller"). This definition could apply broadly to wholesalers, distributors, independent bookstores, online retailers, e-book sellers, publishers, authors, and others.

[3] HB 900 does not define "library material," but read literally, it could include books, reference works, magazines, newspapers, and audio and audiovisual materials, in both physical and digital formats (hereinafter, "books").

[4] Hereinafter, "public schools."

[5] All statutory citations in this Brief will be to the Texas Education Code unless otherwise noted.

and are barred from ever being sold to public schools. ROA.126, 128; § 33.021(a), 35.001(2). "Sexually explicit material" is defined as "sexually relevant material" the depiction of which is presented "in a way that is 'patently offensive', as defined by Section 43.21, Penal Code." ROA.126; § 33.021(a). The definition of "patently offensive" requires Plaintiffs to determine, for each book, whether it is "so offensive on its face as to affront current community standards of decency." Tex. Penal Code § 43.21(a)(4). The law does not define community standards. Nor does it explain what age or grade level of students should be considered.

To comply with the onerous rating requirements, Plaintiffs must first compile a list of books that must be reviewed and rated, which includes all books ever sold to Texas public schools that do not directly relate to the curriculum and are currently in active use. ROA.128; § 35.002(a), (c). There is no statewide curriculum governing the 1,025 Texas school districts, and "active use" is not defined in the statute or elsewhere in the Education Code. ROA.129; § 35.002(b)(2). Once that list is compiled, Plaintiffs must review each passage of each book and follow the steps in the below chart ("Vagueness Chart"). ROA.128-130; §§ 35.001, 35.002, 35.0021.

| | **LIBRARY MATERIAL** |
|---|---|
| 1. | Booksellers must rate "…**any communication**, language, or material, including a written description, illustration, photographic image, video image, or audio file…" |
| | **CURRICULUM** |
| 2. | "…other than library material **directly related to the curriculum** required under Section 28.002(a)…," and |
| | **ACTIVE USE** |
| 3. | "…in **active use** by the district or school." (neither "directly related to the curriculum" or "active use" are defined) |
| | **SEXUALLY RELEVANT** |
| 4. | "'**Sexually relevant material**' means [library material]… that describes, depicts, or portrays <u>sexual conduct</u>, as defined by Section 43.25, Penal Code." |
| 5. | "'**Sexual conduct**' means <u>sexual contact</u>, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or <u>lewd exhibition</u> of the genitals, the anus, or any portion of the female breast below the top of the areola." (43.25 Penal Code) |
| 6. | "'**Sexual contact**' means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." (43.01 Penal Code) |

| 7. | "**Lewd exhibition**" is not defined in the Penal Code. |
|---|---|
| **SEXUALLY EXPLICIT** | |
| 8. | "'[S]exually explicit material' means any [library material] …that describes, depicts, or portrays sexual conduct, as defined by Section 43.25, Penal Code, in a way that is <u>patently offensive</u>, as defined by Section 43.21, Penal Code." |
| 9. | "'**Patently offensive**' means so offensive on its face as to affront current <u>community standards of decency</u>." (43.21(a)(4) Penal Code) |
| 10. | "**Current community standards of decency**" are not defined in the Penal Code. |
| **CONTEXTUAL ANALYSIS** | |
| 11. | "For purposes of determining whether a library material is sexually explicit as required by Section 35.002, a library material vendor must perform a **contextual analysis** of the material to determine whether the material describes, depicts, or portrays sexual conduct in a way that is patently offensive." |
| 12. | **Factor 1**: "…the explicitness or graphic nature of a description or depiction of sexual conduct contained in the material;…" |
| 13. | **Factor 2**: "…whether the material consists predominantly of or contains multiple repetitions of depictions of sexual or excretory organs or activities; and …" |

| 14. | **Factor 3**: "…whether a reasonable person would find that the material intentionally panders to, titillates, or shocks the reader…" |
| 15. | "[A] vendor must **weigh and balance** each factor and conclude whether the library material is patently offensive, recognizing that because each instance of a description, depiction, or portrayal of sexual conduct contained in a material may present a unique mix of factors." |
| 16. | "[A] vendor must **consider the full context in which the description, depiction, or portrayal of sexual conduct appears**, to the extent possible, recognizing that contextual determinations are necessarily highly fact-specific and require the consideration of contextual characteristics that may exacerbate or mitigate the offensiveness of the material." |

As demonstrated in the Vagueness Chart, the 16-step process required by HB 900 requires "weigh[ing] and balanc[ing]" a "unique mix of factors" and making "contextual determinations [that] are necessarily highly fact-specific." ROA.130; §§ 35.0021(c), 35.0021(d). According to HB 900, which was to go in effect on September 1, 2023, Plaintiffs "may not sell library materials" to Texas public schools unless and until they issue the ratings. § 35.002(a).

**B.    HB 900's requirements for Defendants.**

Assuming the arduous task of completing the initial ratings required by § 35.002(a) is completed, Plaintiffs must submit their list of ratings to the Texas Education Agency ("TEA") and Defendant Mike Morath, the TEA Commissioner,

12

by April 1, 2024. ROA.128-129; § 35.002(c). Upon receipt, the TEA must post each bookseller's list of ratings as the bookseller's own rating (not the government's rating) "in a conspicuous place" on TEA's website "as soon as practicable." ROA.129; § 35.002(e). In addition to compelling the ratings in the first place, if the TEA believes that a bookseller has "incorrectly" rated a book, it may compel a bookseller to adopt the agency's "corrected rating," which will be published on TEA's website, once again, as the bookseller's rating. ROA.130-31; § 35.003(a), (b), (c). If a bookseller does not acquiesce to TEA's revised ratings for *every* book, the agency must place the bookseller on a public blacklist on TEA's website and school districts will be permanently banned from purchasing *any* books (not only those with "corrected ratings") from them unless the bookseller adopts the revised ratings on *every single book* at issue (the "Prohibition List"). ROA.131; § 35.003(c), (d), (e). Each year, booksellers must repeat the ratings process and submit a revised list of ratings to TEA by September 1. ROA.129; § 35.002(d).

A bookseller can only be removed from the Prohibition List if it acquiesces to the government's compelled speech and adopts the government's ratings for every book. ROA.131; § 35.003(e). HB 900 includes no ability to seek independent review of TEA's determinations.

**II.**    **The District Court enjoins the enforcement of HB 900's rating requirements, finding them to be unconstitutional in at least three ways.**

In response to the Complaint and Motion for Preliminary Injunction, Defendants filed a Motion to Dismiss and Response in Opposition to Plaintiffs' Motion for Preliminary Injunction on August 16, 2023 ("Motion to Dismiss"). ROA.240-276. The District Court held in-person hearings on the Motion for Preliminary Injunction and Motion to Dismiss on August 18, 2023 and August 28, 2023. ROA.782-868; ROA.869-960.

During a remote Status Conference on August 31, 2023, the District Court granted the Motion for Preliminary Injunction, denied the Motion to Dismiss, and orally enjoined the statute before it could take effect on September 1, 2023. ROA.961-68. The District Court also denied Defendants' oral request to stay the preliminary injunction. ROA.966. The next day, Defendants filed a Motion for Stay of Proceedings Pending Appeal ("Motion for Stay"). ROA.662-72.

On September 18, 2023, the District Court issued a written Order preliminarily enjoining only the portion of the statute directly applying to Plaintiffs, *i.e.* the enforcement of the ratings provisions (§§ 35.001, 35.002, 35.0021, and 35.003) ("Rating Requirements"). ROA.700-758. The District Court did not enjoin the library standards provisions, § 33.021 ("Library Standards"), or other provisions concerning Defendants' review and reporting of certain library materials, §§ 35.004–008. ROA.758. The District Court held that HB 900 likely violates the First and

14

Fourteenth Amendments under 42 U.S.C. § 1983 because it (1) unconstitutionally compels speech, (2) contains several unconstitutionally vague provisions, and (3) is an unconstitutional prior restraint. ROA.700-758.

The District Court also held that the law subjects Plaintiffs to multiple forms of irreparable harm and that the balance of harms and public interest favors an injunction preserving the status quo. ROA.753-57. The partial nature of the injunction carefully preserved the State's ability to formulate Library Standards and review books without economically burdening private businesses. The Order did not address Defendants' Motion for Stay. ROA.662-72. The next day, the District Court held a remote hearing where the Court confirmed that the law was not enjoined in its entirety. ROA.986-99.

### III.   **This Court grants an administrative stay of the preliminary injunction.**

On September 20, 2023, Defendants filed an Emergency Motion to Stay Preliminary Injunction Pending Appeal and for a Temporary Administrative Stay ("Emergency Motion to Stay") in this Court. Dkt. 8. On September 25, 2023, this Court entered an administrative stay of the preliminary injunction. ROA.780. Plaintiffs filed a Response in Opposition to the Emergency Motion to Stay on October 2, 2023. Dkt. 41. On October 5, 2023, this Court ordered the Emergency Motion to Stay carried with the case. Dkt. 44.

Although the Rating Requirements were initially enjoined, they have been in effect since this Court entered the administrative stay on September 25, 2023. ROA.780. Given the administrative stay of the injunction, Plaintiffs must now complete an impossible and unconstitutional task with which they cannot comply. The Library Standards were never enjoined and are not at issue in this appeal. ROA.128; § 35.002(a).

## SUMMARY OF THE ARGUMENT

Defendants' appeal fails because the District Court correctly granted preliminary injunctive relief by enjoining the enforcement of HB 900's Rating Requirements and denying Defendants' attempts to dismiss the case under jurisdictional and sovereign immunity grounds.

The District Court correctly held that Plaintiffs had Article III standing because HB 900 causes imminent constitutional, reputational, and economic injury to Plaintiffs by compelling them to review and rate every book ever sold to a public school as a condition of future sales using vague definitions and government criteria with which they disagree. Plaintiffs' claims are ripe because these statutory requirements impose *immediate* hardship on Plaintiffs by compelling them to speak the government's message and causing them to incur significant harm. And Defendants are not entitled to sovereign immunity because their enforcement power fits squarely within the *Ex parte Young* exception, 209 U.S. 123, 155-56 (1908).

16

Next, the District Court correctly held that Plaintiffs are likely to succeed on the merits because HB 900 is unconstitutional for at least three reasons. First, HB 900 violates Plaintiffs' First Amendment right to be free from unwanted compelled speech by requiring them to express government messages with which they disagree or face punishment, barred under *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023). Second, HB 900 is unconstitutionally vague because it contains unclear directions based on confusing definitions, does not consider differences in age or location, and fails to take into account the critical third prong of the *Miller v. California* test, which requires a consideration of whether the material "taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. 15, 24 (1973); *see also Ginsberg v. State of N.Y.*, 390 U.S. 629, 633 (1968). Third, HB 900 is an unconstitutional prior restraint because it grants the government unbridled discretion, without judicial oversight, to prohibit future sales of constitutionally protected books to schools with no opportunity to appeal final determinations or have them reviewed judicially. The District Court also properly rejected Defendants' alternative theories of why First Amendment protections do not apply, determined that Plaintiffs would suffer irreparable injuries unless HB 900 was enjoined, and found that the balance of equities and public interest favored injunctive relief.

This case is not about the Library Standards and Proposed Rule[6] (which were not impacted by the Preliminary Injunction and the State has continued to enforce), but the onerous and unconstitutional portions of the law that directly affect Plaintiffs, which even the author of the law admits Plaintiffs have standing to challenge.[7] Nothing in the Library Standards or Proposed Rule will change the law's requirement for private businesses to publicly rate every book ever sold to Texas schools (and that they plan to sell in the future)—a task they do not agree with and that will result in severe financial harm and likely the cessation of business for many independently owned booksellers. Further, the unconstitutional and overbroad definitions are actually mandated to be included in the Library Standards. ROA.126-127; §§ 33.021(a), 33.021(d)(2)(A)(ii).

This Court should adopt the District Court's well-reasoned analysis and affirm the Preliminary Injunction, deny Defendants' Emergency Motion to Stay and lift the administrative stay so that the status quo is maintained while this case is fully adjudicated below.

---

[6] *See* 48 Tex. Reg. 6291 (to be codified at 13 Tex. Admin. Code § 4.2).

[7] The law's author agrees and "does not dispute" that Plaintiffs have standing to bring their claims. Brief for *Amicus Curiae* Texas State Representative Jared Patterson In Support of Appellants at 8 (Dkt. 93).

**ARGUMENT**

**I.    Plaintiffs have established federal court jurisdiction.**

**A.    Plaintiffs have Article III standing to challenge HB 900.**

The District Court correctly found that Plaintiffs have Article III standing because Plaintiffs will suffer an injury-in-fact that is traceable to Defendants and will likely be redressed by a preliminary injunction. ROA.715-723; *Lujan v. Def's of Wildlife,* 504 U.S. 555, 560-61 (1992) (setting forth three criteria for standing). Although jurisdiction is proper if at least one plaintiff has standing, each Plaintiff has standing.[8] *See Missouri v. Biden*, No. 23-30445, 2023 WL 6425697, at *7 (5th Cir. Oct. 3, 2023), *stayed and cert. granted sub nom.*, *Murthy v. Missouri*, 2023 WL 6935337 (U.S. Oct. 20, 2023) ("The presence of any *one* plaintiff with standing to pursue injunctive relief … satisfies Article III's case-or-controversy requirement.").

Far from being "disfavor[ed]" (Br. at 19), pre-enforcement facial constitutional challenges, such as this, are critical to preserving fundamental First Amendment rights. As this Court recently held, "[i]t is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations

---

[8] BookPeople and Blue Willow have independent standing. ABA, AAP, the Guild, and CBLDF have associational standing on behalf of their members who will be injured by HB 900. *See* ROA.137-141, 149-154, 162-171; *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 234 (5th Cir. 2023) (standing can be based on the "likelihood that some members of a discrete group, but not all, will be injured").

19

governing" constitutionally protected speech, like this one. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020). To establish standing, Plaintiffs must show (1) an intention to engage in a course of conduct arguably affected with a constitutional interest; (2) the future conduct is arguably proscribed by statute; and (3) the threat of future enforcement of the statute is substantial. *Id.* at 330 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161-164 (2014)).

Plaintiffs establish injury-in-fact under *Speech First* because they have a clear intention to engage in First Amendment conduct that is arguably proscribed by HB 900. Plaintiffs also establish injury-in-fact because HB 900 causes imminent constitutional, reputational, and economic harm. Plaintiffs satisfy the final prong under *Speech First* because Defendants are tasked with enforcing HB 900 and they have not provided "compelling contrary evidence" that they will not enforce the law. Finally, Plaintiffs show that their injuries will be redressed by enjoining the enforcement of HB 900.

### 1. Plaintiffs establish injury-in-fact.

#### a. Plaintiffs show injury-in-fact under *Speech First*.

It is uncontroverted that Plaintiffs intend to engage in a course of conduct arguably affected with a constitutional interest because they have sold—and intend to continue selling—library books to Texas public schools, which is protected by the First Amendment. ROA.716; ROA.155-56 ¶¶ 3-7; ROA.143-44 ¶¶ 3-6, 27;

ROA.163 ¶ 5; ROA.150 ¶ 4; *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012) (the distribution of books "is precisely the type of interest at the core of First Amendment protections"). Plaintiffs also seek to be free from compelled speech. *303 Creative*, 600 U.S. at 586 (the First Amendment protects the right to not be compelled to speak the government's preferred message).

Further, Plaintiffs' future conduct—distributing books to Texas public schools and not being compelled to speak—is plainly proscribed by HB 900. The undisputed evidence presented to the District Court established that Plaintiffs are "library material vendors," as defined by HB 900, and thus are subject to its provisions. ROA.128; § 35.001(1). Plaintiffs must comply with HB 900's Rating Requirements, which forces them to speak against their will, or else be prohibited from distributing any books to public schools. ROA.716; ROA.128; § 35.002(a).

Finally, because HB 900 facially restricts Plaintiffs' expressive activity, courts will assume a credible threat of enforcement in the absence of compelling contrary evidence. *Speech First*, 979 F.3d at 335 (assessing third factor). Despite repeated opportunities to disavow an intent to enforce HB 900, Defendants have never done so; instead, they have repeatedly demonstrated their intent to move forward with their efforts to implement the law. *See, e.g.,* ROA.662-672; Dkt. 8.

      **b.**    **Plaintiffs show injury-in-fact because HB 900 causes imminent constitutional, reputational, and economic harm.**

Plaintiffs also show injury-in-fact because HB 900 will cause them *imminent* constitutional, reputational, and economic harm.

First, HB 900 implicates Plaintiffs' constitutional rights by compelling them to provide library book ratings in the first instance and to do so based on government criteria with which they both disagree and cannot comply. HB 900 also forces Plaintiffs to adopt the State's "corrected ratings" they oppose or lose their ability to sell *any* books to Texas schools (not only books that are corrected). § 35.002(a); *303 Creative*, 600 U.S. at 586 ("[T]he government may not compel a person to speak its own preferred messages.").

Much more than merely "encourag[ing]" or "urg[ing]" Plaintiffs to rate library materials (Br. at 1, 7, 40), HB 900 *compels* Plaintiffs' speech in "at least two ways," each of which causes them independent injury. *303 Creative*, 600 U.S. at 580-81, 597 (finding standing based on "credible threat" that government would "seek to compel speech"); ROA.302. First, Plaintiffs are compelled to rate books as "sexually explicit" or "sexually relevant" based on vague definitions and a set of complicated criteria (*see* § I.A. above) created solely by the government and with which they disagree. *See, e.g.*, ROA.159 ¶ 19 ("BookPeople does not believe it should be compelled to provide these ratings, based on criteria in which it does not agree, in order to sell books to public schools."); ROA.153 ¶ 14; ROA.145 ¶ 17; ROA.165 ¶ 15. Through HB 900, the State "is compelling the Plaintiffs to engage in

speech they do not want to engage in, i.e. the publication of ratings of books." ROA.720. Regardless of Plaintiffs' disagreements, TEA publishes the ratings publicly on its website as the bookseller's ratings. ROA.129; § 35.002(e).

Second, Plaintiffs are further compelled to speak against their views because TEA can overrule Plaintiffs' ratings and require them to adopt the State's rating as their own. ROA.130-31; § 35.003(a), (b), (c). "If—and almost certainly *when*—the TEA disagrees with a rating," Plaintiffs must re-rate the book consistent with TEA's "corrected" rating, which the TEA will post publicly on its website as Plaintiffs' ratings in contravention of their views. ROA.130-31, 718; § 35.003(a), (b), (c). Because HB 900 compels Plaintiffs to violate their consciences, they will suffer a cognizable injury. *See All. for Hippocratic Med.*, 78 F.4th 210, 236 (5th Cir. 2023) (petition for certiorari filed Sept. 12, 2023, and docketed Oct. 16, 2023). ("conscience injury is cognizable"). Plaintiffs face additional constitutional injury because HB 900 interferes with their ability to distribute books. *See Prison Legal News*, 683 F.3d at 212 ("Government interference with one's attempts to sell or distribute written material unquestionably satisfies Article III's injury-in-fact requirement.").

Plaintiffs will also face reputational harm because the ratings will be seen publicly as Plaintiffs' speech. Indeed, "[a]ny state-issued ratings then adopted by vendors are not confined for viewing by only public schools or Texas residents but

are accessible and viewable by anyone who accesses the TEA website." ROA.718. Plaintiffs have testified that the online postings will cause reputational harm. *See, e.g.*, ROA.146 ¶¶ 20-21 ("I am also concerned that the public posting of any ratings by Blue Willow would lead to stigma and reputational harm for our company."); ROA.159-160 ¶¶ 20-21, 26. This type of reputational harm constitutes an independent injury. *See Meese v. Keene*, 481 U.S. 465, 476 (1987) (finding standing based on reputational injury); *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (reputational harm constitutes irreparable injury).

Although the constitutional and reputational harms are sufficient to confer standing, HB 900 also causes significant economic damages. For example, the law has already caused at least one Plaintiff to lose business from Katy ISD, which ceased its purchasing because of the law. ROA.147 ¶ 24; ROA.323-326. Plaintiffs will face additional economic harm because, although Plaintiffs need not submit their ratings to the TEA until April 1, 2024, HB 900 expressly bans Plaintiffs from selling *any* books to public schools *until* they have complied with the Rating Requirements.

> A library material vendor *may not sell* library materials to a school district or open-enrollment charter school *unless* the vendor has issued appropriate ratings regarding sexually explicit material and sexually relevant material previously sold to a district or school.

ROA.128; § 35.002(a) (emphasis added). A "plain reading" of § 35.002(a) "reveals that vendors are prohibited from selling books in the interim, between September 1, 2023 and April 1, 2024." ROA.712. Thus, during this period, Plaintiffs will suffer harm from lost sales from public schools because, among other reasons, they do not have complete records of all books "previously sold to a district or school." § 35.002(a); *see, e.g.*, ROA.157 ¶ 9 (BookPeople testifying to lack of records detailing all products sold to schools during its 53 years in business); ROA.144 ¶¶ 7-8; ROA.163 ¶ 6; ROA.150 ¶ 5; *All. for Hippocratic Med.*, 78 F.4th at 235 ("[E]conomic harm—like damage to one's business interest—is a quintessential Article III injury.").

Finally, Plaintiffs will face further economic injury through the expense of complying with HB 900. Because HB 900 requires Plaintiffs to conduct the burdensome and costly task of reviewing each book cover to cover and providing ratings for *all* books ever sold to school districts, Plaintiffs will be forced to divert extensive resources and valuable time from their normal operations. §§ 35.0021, 35.002(a), (b). For example, Blue Willow has estimated its compliance costs as between $200 and $1,000 per book and the cost to rate books already sold as between $4 million and $500 million. ROA.145 ¶¶ 14-15. With annual sales of just over $1 million, attempts to comply with this law will assuredly put the family-owned bookstore out of business. ROA.145 ¶ 16; *see also* ROA.158 ¶ 16 (testifying

BookPeople will go out of business if forced to comply.). The Educational Book and Media Association estimated that reviewing just 500 books would cost $93,750 and for booksellers that have sold 50,000 books, the review would require 250,000 employee hours and cost at least $9.375 million. ROA.650; *see All. for Hippocratic Med.*, 78 F.4th at 235 (plaintiffs "sustain a concrete injury when they are forced to divert time and resources away from their regular" jobs). For the State's review alone, the Legislative Budget Board estimated it would cost $2.6 million. ROA.328-329.

## 2. Plaintiffs' injuries are fairly traceable to Defendants.

Plaintiffs' injuries are fairly traceable to Defendants because Defendants are directly responsible for the new ratings regime, and they have not provided "compelling contrary evidence" that they will not enforce the law. *See Speech First*, 979 F.3d at 335 ("[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence.") (internal quotations omitted). In fact, Defendants did not submit any such evidence at the trial court level, and when asked directly by the District Court about enforcement, they did not state they would not enforce the law. ROA.721; ROA.796-797 (HB 900 "definitely

could" be enforced in the future). The Emergency Motion to Stay filed in this Court

signals their intent to do exactly that—enforce the law. Dkt. 8.

Defendants are tasked with overseeing, implementing, and/or enforcing HB

900. Such oversight establishes standing. *See, generally,* ROA.851, 853; *Air Evac*

*EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp*., 851 F.3d 507, 514 (5th Cir.

2017) (traceability satisfied where state defendants oversee the challenged process

reasoning that oversight "places state defendants among those who cause [the

plaintiff's] injury"). Defendant Martha Wong, chair of the Texas State Library and

Archives Commission's ("TSLAC") and Defendant Keven Ellis, chair of the Texas

Board of Education ("BOE") are responsible for implementing the Library

Standards, which incorporate unconstitutionally vague definitions, and imposing

those requirements on Plaintiffs, which constrain Plaintiffs from selling

constitutionally protected materials to schools. ROA.126-127; § 33.021(a).[9]

Defendant Mike Morath, Commissioner of TEA, has complete authority to

oversee and enforce the Rating Requirements which incorporates the statutory

scheme compelling speech from booksellers by requiring them to rate books. It is

undisputed that TEA is required to:

---

[9] Although on the cusp of being finalized (and the version issued for public comment
generally tracks the language of HB 900), the Library Standards are required to
incorporate the statutory definition of "sexually explicit," § 33.021(c), (d)(2)(A)(ii),
and cannot change the unconstitutional statutory regime which requires booksellers
to create ratings.

- Collect all ratings of books submitted by Plaintiffs;

- Post those ratings "in a conspicuous place" on TEA's website;

- Review Plaintiffs' ratings;

- Notify Plaintiffs if TEA disagrees with their ratings;

- Post the names of booksellers that fail to rate books in accordance with TEA's revised rating on the Prohibition List on TEA's website;

- Review any petitions from booksellers to be removed from the Prohibition List.

Br. at 8-9; *see also* ROA.128-129, 131, 809; §§ 35.002(c)-(e), 35.003(a), (d). HB 900 requires Plaintiffs to issue initial ratings and report them to the TEA. § 35.002(a), (c). The TEA is required under HB 900 to collect and review Plaintiffs' ratings—and can even overrule them. § 35.003. Thus, Plaintiffs' injuries, which stem from having to meet the Rating Requirements, are fairly traceable to the TEA. *See K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (finding traceability when the defendants are "among those who would contribute to Plaintiffs' harm;" "Tracing an injury is not the same as seeking its proximate cause.")

TEA cannot wash its hands of its role in enforcing HB 900 by shifting the burden to school districts and claiming that it merely creates the Prohibition List because it ignores the harm caused by the Rating Requirements in the first instance

and neglects Defendants' admission that the Prohibition List causes Plaintiffs' harm. Br. at 27 (being placed on the Prohibition List "could precipitate potential reputational harm and associated lost-revenue injuries.").

Nor is it tenable that TEA will align with Plaintiffs on every single rating. As the District Court found, because hundreds (if not more) booksellers will be providing ratings for thousands of books, it is "beyond question" that there will be conflicting ratings that the TEA must resolve. ROA.719. During multiple hearings, Defendants had the opportunity to be unequivocal by stating that TEA would not override any ratings, but counsel "could not do [so] and be faithful to the text of the statute." ROA.721. Instead, Defendants' counsel testified that "eventually, there may be" the potential for harm from enforcement and that the law "definitely could" be enforced in the future. ROA.796-797. Defendants also failed to disavow their right or intention to enforce HB 900 in any court filings. A state official's failure to state their future intent regarding enforcement, such as Defendants' silence, is evidence of potential enforcement. *See Consumer Data Indus. Ass'n v. Tex. through Paxton*, No. 21-51038, 2023 WL 4744918, at *5 (5th Cir. July 25, 2023) ("the Texas Attorney General has never stated or even suggested that the statute would not be enforced in the future").

Finally, while Plaintiffs' standing does not rely on third parties (because Plaintiffs are directly subject to the law), *Lujan*, 504 U.S. at 561–62, traceability can

be satisfied based on the "predictable effect of Government action on the decisions of third parties." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). There is a direct causal connection between the book-buying decisions of school districts and the impending application of the law, which severely restricts school districts' abilities to purchase certain books. *See also All. for Hippocratic Med.*, 78 F.4th at 233 (it is irrelevant that the foundation of the plaintiffs' standing rests, in part, on choices made by independent actors). Because the "predictable effect" of HB 900 is that school districts will stop buying books from Plaintiffs and Plaintiffs will be harmed, their injury is traceable to Defendants. *See Gen. Land Office v. Biden*, 71 F.4th 264, 273 (5th Cir. 2023) (finding traceability when the plaintiff's injuries relied on the "predictable effect" of government action on the decisions of third parties).

### 3. Plaintiffs' injuries will be redressed by enjoining Defendants from enforcing HB 900.

Plaintiffs satisfy the redressability requirement of standing because "it is likely, as opposed to merely speculative, that [their] injur[ies] will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). If the preliminary injunction is upheld, Plaintiffs will no longer need to review and rate any books, can resume selling books to public schools, and will not have to agree to compelled speech against their will. Thus, Plaintiffs' constitutional, reputational, and economic injures will be cured.

Although a favorable ruling need only lessen the harm to meet the redressability requirement, *see Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014), an injunction would *significantly* lessen Plaintiffs' injury by eliminating the substantial costs they would incur to comply with HB 900's Rating Requirements and any threat of compelled speech. ROA.370.

An injunction would also redress Plaintiffs' ability to compete on equal footing with new booksellers who do not have years of prior books to rate. By enjoining the enforcement of HB 900, which restricts the opportunity to sell books to public schools to only those who comply with the law's onerous requirements, Plaintiffs would again have an equal opportunity to sell books to public schools. *See Ne. Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656-57 (1993) (the "inability to compete on an equal footing" confers standing); ROA.722-723.

### B.   Plaintiffs' claims are ripe.

Plaintiffs' claims are ripe for review because they raise constitutional questions under the First and Fourteenth Amendments, which are pure questions of law, and no additional factual development is required to find HB 900 unconstitutional. *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 930 (5th Cir. 2023) ("[A] claim is 'fit for judicial decision' if it presents a pure question of law that needs no further factual development."); *Opulent Life Church v. City of Holly*

*Springs*, 697 F.3d 279, 287(5th Cir. 2012) (facial and as-applied constitutional challenge to an ordinance was ripe for review because it raised "pure questions of law").[10]

HB 900 causes immediate hardship on Plaintiffs by requiring them to conduct book ratings, in the first instance, and to do so using criteria with which they disagree in violation of their right against compelled speech and causing them to incur significant economic harm.

As explained in § II.A. below, HB 900 violates Plaintiffs' First Amendment rights to be free from compelled speech. Whether the State can compel Plaintiffs' speech is a purely legal question and is clearly ripe for the Court's consideration. ROA.723-724. Besides the clear and current constitutional harms, Plaintiffs are presently suffering economic harm because some school districts, like Katy ISD (ROA.323-326), ceased purchasing library books until the vagaries of the statute can be clarified. ROA.147 ¶ 24.

Unless Plaintiffs can spare the hundreds of thousands or millions of dollars (*see* ROA.145 ¶¶ 14-15; ROA.158 ¶ 16; ROA.650.) to attempt to navigate the highly subjective ratings before April 1, they will be prohibited from selling *any* library materials to *any* public school. ROA.128, § 35.002(a). To fulfill the unconstitutional

---

[10] The law's author agrees that Plaintiffs' claims are ripe. Dkt. 93 at 8 ("This Court has been clear that facial claims are ripe the moment the regulation is passed.").

demands of HB 900, Plaintiffs will incur "astronomical" compliance costs. *See Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 200 (5th Cir. 2000) (case was ripe for review because of "concrete economic hardship"). ROA.755. Such a "direct effect" on Plaintiffs' "day-to-day business" is a significant hardship sufficient for ripeness. *See Groome Res.*, 234 F.3d at 200 (statutory penalty established ripeness).

Defendants' suggestion that additional factual development is necessary because Plaintiffs may not be placed on the Prohibition List ignores the mountain of harms that will occur *before* Plaintiffs are placed on the blacklist. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 743–44 (1997) ("[W]here a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, hardship has been demonstrated.") (internal quotations omitted).

Similarly, Defendants' assertion that the case is unripe because the Proposed Rule was recently promulgated in connection with HB 900, Br. at 15, is meritless. The Proposed Rule will have *no* bearing on the regulatory scheme or Plaintiffs' duties under HB 900—nor could it, because the relevant provisions are clearly enumerated in the statutory text and therefore cannot be modified by any subsequent rule. *See State, Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied) ("agency's rules must

comport with the [] authorizing statute"). As it must, the Proposed Rule simply recites the statutory language and incorporates the unconstitutionally vague statutory definitions and does not alter the process for rating and reviewing books, as prescribed by the statute. *Compare* proposed 13 Tex. Admin. Code § 4.2(c)(5), (c)(7)(B) *with* Tex. Educ. Code §§ 33.021(d)(2)(A)(ii), 35.005.

Finally, any suggestion that adjudication should be delayed until Defendants are placed on the Prohibition List and school districts refuse to purchase books because Defendants can then sue the school district is misguided. As explained above, Plaintiffs have correctly sued those with oversight and control over HB 900. Such a theory ignores the plain text of HB 900, which expressly immunizes school districts from such liability. ROA.132; § 35.004 ("A school district … is not liable for any claim or damage resulting from a library material vendor's violation of this chapter.").

## C.    Defendants are not entitled to sovereign immunity because the *Ex Parte Young* exception applies.

Defendants are not entitled to sovereign immunity because their enforcement power fits squarely within the *Ex parte Young* exception. Under *Ex parte Young*, 209 U.S. 123, 155-56 (1908), sovereign immunity may be overcome when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013).

34

The *Ex parte Young* analysis "turns on … whether 'the state officer, by virtue of his office, has some connection with the enforcement of the act.'" *Air Evac EMS,* 851 F.3d at 519. "'[E]nforcement' means 'compulsion or constraint.'" *Tex. All. for Retired Americans,* 28 F.4th at 672. As the District Court correctly found, Defendants are empowered to enforce HB 900. ROA.725. "Defendant Morath, as commissioner of TEA, is ultimately responsible for collecting lists of ratings, reviewing booksellers' ratings, notifying booksellers when their ratings are overridden, and posting lists of ratings and recalcitrant vendors on TEA's website." ROA.725. The District Court found that Defendant Wong, as the chair of TSLAC, and Defendant Ellis, as chair of BOE, are responsible for formulating and promulgating mandatory library standards for public schools, which will impact how books ratings are applied. ROA.725. Collectively, these acts both "compel" and "constrain" Plaintiffs—compelling them to submit ratings with which they disagree and constraining them from continuing to do business with school districts if they fail to submit the required ratings or decline to acquiesce in the State's revised ratings.

Defendants mistakenly assert that *school districts* compel and constrain under the law. Br. at 30. This argument misreads the statute. Whether school districts can purchase books from Plaintiffs depends entirely on the enforcement action of Defendants. School districts do not mandate the ratings, collect the ratings, post the

ratings, revise the ratings, demand that Plaintiffs accept revised ratings, or add Plaintiffs to the Prohibition List. While the challenged law need "not actually state the official's duty to enforce it," the law assigns all of those specific duties to Defendants. *City of Austin v. Paxton*, 943 F.3d 993, 997-98 (5th Cir. 2019).

Only a "scintilla of 'enforcement'" is required to overcome sovereign immunity. *Id.* at 1002. Here, Defendants have far exceeded the "scintilla" standard, and have exhibited a "demonstrated willingness to exercise [their] duty." *Id.* at 998. Numerous provisions of HB 900 demonstrate "specific duties" of Defendants (ROA.126-31; § 33.021(c), (e); § 35.003(a), (c)) which are more than sufficient to show the "scintilla of 'enforcement'" required to overcome sovereign immunity. *City of Austin*, 943 F.3d at 1002. Further, by their own admission, Defendants have already begun the enforcement process by submitting a Proposed Rule to effectuate HB 900. Br. at 15.

Defendants ignore all these enumerated tasks and suggest only that the TEA's ability to place Plaintiffs on the Prohibition List is not compulsion or control. Br. at 30. As previously demonstrated, this glosses over the myriad of unconstitutional requirements imposed by TEA *before* the non-compliant list is developed, *i.e.* the requirements to rate and do so applying government definitions with which they disagree and having those ratings attributed to them on the internet.

**II.** **The District Court correctly held that Plaintiffs are likely to succeed on the merits because HB 900 is unconstitutional.**

This case concerns vital First Amendment rights—the right be free from unwanted compelled speech and the right to distribute constitutionally protected works. *303 Creative*, 600 U.S. at 586 ("[T]he government may not compel a person to speak its own preferred messages."); *Prison Legal News*, 683 F.3d at 212 (the distribution of books "is precisely the type of interest at the core of First Amendment protections"); *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943) (the First Amendment protects "the right to distribute literature"). It also involves the fundamental First Amendment principles that laws affecting speech must not be impermissibly vague or overbroad. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).[11]

**A.** **HB 900 is "textbook compelled speech" because it requires Plaintiffs to speak when they would prefer not to and express government messages with which they disagree or face punishment.**

**1.** **HB 900 compels Plaintiffs to speak in at least two ways.**

The District Court correctly found that HB 900 is "textbook compelled speech" because it "impermissibly seeks to compel an individual or a corporation to

---

[11] To be clear, Plaintiffs do not assert that the government is obligated to purchase anything from Plaintiffs. Br. at 32-33. Nor do they allege a First Amendment right to allow "sexually explicit" books in schools or prevent their removal. Br. at 32-34.

create speech that it does not wish to make" and provides the government "total, unilateral power to alter any rating with which they disagree." ROA.702, 736.

It is axiomatic that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The First Amendment prevents the government from compelling the expression of its own preferred message, requiring speech when a potential speaker would prefer to remain silent, or forcing the inclusion of other ideas with one's own speech. *303 Creative*, 600 U.S. at 586.

HB 900 offends long-established compelled speech doctrine "in at least two ways." ROA.718. First, HB 900 coerces Plaintiffs to review library books and express whether a book contains sexual content by issuing a rating based on vague standards with which they disagree. ROA.159 ¶ 19; ROA.153 ¶ 14; ROA.145 ¶ 17; ROA.165 ¶ 15. Those ratings are then posted on TEA's website and attributed to Plaintiffs. ROA.735; § 35.002. Second, if the TEA determines that Plaintiffs' ratings are "incorrect," the TEA has the "unilateral ability" to alter the ratings and "force Plaintiffs to allow the TEA to publish the rating as if the revised rating were Plaintiffs' own." ROA.735-736; § 35.003. Plaintiffs must also "issue a recall" for books rated as "sexually explicit." § 35.002(b).

Plaintiffs are faced with a series of Hobson's choices. First, they must choose to issue ratings or stop doing business with Texas public schools. Second, even if they compromise their beliefs and rate books (an impossible task as outlined in § II.B.), if the State disagrees with a single rating, Plaintiffs must "(1) adopt the State's alternative ratings—meaning listing the State's rating as their own (which is posted online), even when they disagree—in order to sell <u>any</u> books to public schools *or* (2) follow their sincerely held beliefs by refusing to adopt State-mandated ratings with which they disagree and be permanently banned from selling books to Texas public schools." ROA.507-508, 710; § 35.003. Plaintiffs will be irreparably injured either way. If Plaintiffs yield to the State's demands, they will betray their conscience. If Plaintiffs fail to provide ratings or do not accept the State's ratings, they will face "substantial financial harm" by being prevented from selling *any* books to public schools and could also incur "reputational harm" because their ratings, published online, will be held against them by potential buyers across the country. ROA.735-736; § 35.002(a); ROA.146 ¶¶ 20-21; ROA.159-160 ¶¶ 20-21, 26.

## 2. *303 Creative* and established Supreme Court precedent demand that HB 900 be enjoined.

As the District Court held, U.S. Supreme Court jurisprudence, as recently as this past term, "compels a conclusion that the statute is unconstitutional." ROA.734; *see, e.g.*, *303 Creative*; *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.*, 515 U.S. 557 (1995).

*303 Creative* applies squarely to this case because like the regulation there, HB 900 "does not seek to impose an incidental burden on speech." *303 Creative*, 600 U.S. at 596. Instead, HB 900 would allow the government to "coopt an individual's voice for its own purposes" and force Plaintiffs to "utter what is not in [their] mind." *Id*. at 592. Plaintiffs do not wish to publicly rate thousands of books for their sexual content based on the State's subjective criteria. These are significant decisions that cannot help but reflect personal value-judgments by Plaintiffs. Like the plaintiff in *303 Creative*, Plaintiffs in this case "must either speak as the State demands or face sanctions for expressing [their] own beliefs." *Id*. at 589. Plaintiffs must convey the State's message or be permanently barred from selling any books to public schools—sacrificing longstanding relationships (and revenue streams) that, in some cases, date back decades. ROA.144-147 ¶¶ 5, 17, 20-22, 25; ROA.159-160 ¶¶ 19-22, 25-26.

The District Court also properly relied on *Hurley*, where the Supreme Court found that forcing parade organizers to include views they disagreed with infringed their First Amendment rights. 515 U.S. at 580. This is "an even stronger [case]" than *Hurley* because Plaintiffs are seeking only to remain silent and not express any public view on the appropriateness of various books. ROA.734.

    **3.**    **HB 900 impermissibly compels Plaintiffs to violate their First Amendment rights as a condition of obtaining a government benefit.**

Although the broad scope of First Amendment protections may not include a right to contract with the government (Br. at 1) or require the government to purchase its books (Br. at 32), the First Amendment surely prohibits the State from enforcing laws like HB 900 that impose unconstitutional conditions on the ability to contract with the government. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The U.S. Supreme Court has "made clear" that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Id*. At bottom, HB 900 denies Plaintiffs the benefit of selling library books to public schools if they do not accede to adopting the government's preferred message.

If Plaintiffs refuse to opine on the highly controversial topic of whether library books contain "sexually explicit" content and should be accessed by minors, they will be denied the ability to contract with public schools. This is a quintessential unconstitutional condition. *See Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996) (the government may not deny a benefit on a basis that infringes one's constitutionally protected freedom of speech, even if there is no entitlement to that benefit). Even if they acquiesce in the first instance, the government may nonetheless *still* withhold benefits if TEA "corrects" a rating and the bookseller refuses to acquiesce to the government's ratings. *See Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 755 (W.D. Tex. 2019) (enjoining

41

anti-BDS law that compelled contractors to certify that they don't boycott Israel as a condition of public employment) (vacated after law amended). Such conditions are unconstitutional.

**B.    HB 900 is unconstitutionally vague.**

The District Court correctly found that HB 900 is a "web of unconstitutionally vague requirements." ROA.757. A law implicating First Amendment rights, like HB 900, may be invalidated on a facial challenge if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010); *see also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546–47 (5th Cir. 2008). "[A] more stringent vagueness test" applies when a law "interferes with the right of free speech." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

Under this heightened test, HB 900 is unconstitutionally vague because it contains unclear definitions, contradictions, confusing requirements, unworkable standards, and leaves booksellers with many unanswered questions. ROA.742-747; ROA.56-57 ¶¶ 17, 23-24; ROA.63-64 ¶¶ 18-19, 26; ROA.152; ROA.154 ¶¶ 11, 17.

To determine *which* books need to be rated, a bookseller must determine whether the book is "directly related to the curriculum" (in which case it does not have to be rated) and whether it is in "active use" (in which case it must be rated).

Neither of these terms are defined. Because there is no statewide curriculum in Texas across its 1,025 school districts and curricula "vary from classroom-to-classroom within a district as well as from day-to-day or year-to-year within a single classroom, requiring consistent reevaluation," it is "impossible for vendors to ascertain what content falls within this exception, or how to determine its scope on a statewide basis." ROA.706; ROA.747-748 (the vagueness of HB 900's exception for material "directly related to the curriculum" is a "separate, independent reason" that the law is unconstitutionally vague).

Then, to determine *what* the rating should be for a single book, a bookseller must undertake the 16-step analysis in the Vagueness Chart, *see* Statement of the Case § I.A, for every passage in the book. The law "provides no bright line" in determining whether books should be rated as "sexually explicit," necessitating complex legal analysis "that hundreds, if not thousands, of attorneys who work as prosecutors wrestle with." ROA.704.

HB 900 employs a multi-prong definition of "sexually explicit material" and "sexually relevant material" (with no guardrails for consideration of literary, artistic, scientific or political value), is based on entirely subjective "community standards" (which vary throughout the state), and mandates booksellers to "consider the full context" of books but not the age or life circumstance of the reader. ROA.745-746. HB 900 imposes the same standard for "sexual content" on an 18-year-old high

school senior as it does on a kindergartner, which would likely prevent older students from accessing classic and award-winning works with educational value. This one-size-fits-all approach to sexual content "encroaches upon speech in a constitutionally overinclusive manner." *ACLU v. Ashcroft*, 322 F.3d 240, 266 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004).

Specifically, the definitions of "sexually relevant" and "sexually explicit" are unconstitutionally vague because, among other reasons, they exclude the "critical backstop" of the third prong of the *Miller*[12] test for obscenity—undoubtedly restricting constitutionally protected works. ROA.746; §§ 33.021, 35.001(3); *see e.g., Reno v. ACLU*, 521 U.S. 844, 873-74 (1997) (the third prong of the *Miller* test "critically limits the uncertain sweep of the obscenity definition"). The law also fails to explain how to make a "contextual determination." ROA.744. "Without knowing what constitutes context, and by not including or evaluating the third prong of the *Miller* test, [HB 900] results in nothing more than a highly personal and subjective test and is unconstitutionally vague." ROA.744.

There is also no clear current community standard of decency to use. HB 900 applies to every public school in Texas, spanning urban areas like Houston, Dallas, and Austin and rural areas such as Caldwell, Llano, and San Saba. These locations have vastly different community standards that will change over time. ROA.744-

---

[12] *Miller v. California*. 413 U.S. 15, 24 (1973).

745. That alone makes the statute constitutionally infirm. *See Coates v. Cincinnati,* 402 U.S. 611, 614 (1971) (finding statute impermissibly vague because "[c]onduct that annoys some people does not annoy others"); *Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("What is contemptuous to one man may be a work of art to another.").

Finally, in reviewing each passage, the bookseller must perform a "contextual analysis" of the passage and consider three factors. ROA.129-30; § 35.0021; ROA.528 ("[T]here is no clear way to apply [HB 900's] definitions and confusing 'contextual analysis' to many classic works of literature, including *Lonesome Dove*.").[13] The bookseller must "weigh and balance" each factor while recognizing that each instance "may present a unique mix of factors." ROA.130; § 35.0021(c). And, the bookseller must "consider the full context in which the description, depiction, or portrayal of sexual conduct appears, to the extent possible, recognizing that contextual determinations are necessarily highly fact-specific and require the consideration of contextual characteristics that may exacerbate or mitigate the offensiveness of the material." ROA.130; § 35.0021(d). All of this is required to review each passage of a book, and every passage must be reviewed with the same multi-step scrutiny to develop a rating for a single book. ROA.929-932. If HB 900

---

[13] Alejandro Serrano, *Texas lawmakers' attempts to ban school library books deemed inappropriate for kids spur confusion – and concerns*, TEXAS TRIBUNE (March 31, 2023).

is implemented, each bookseller would need to apply this complex analysis to hundreds, if not thousands, of books. No consideration is given to varying ratings by different booksellers, further complicating the predictability of the statute's application. ROA.704-705, 743.

Besides the profound vagueness of HB 900's text and the impossible challenge that text poses for booksellers, it is equally impossible to understand or predict how the statute will actually be implemented and enforced by the State.[14] Indeed, the State failed to answer fundamental questions about HB 900 mere days before the law was set to take effect. The August 18th hearing contained approximately 40 instances in which the State either did not know how the law would function or did not have an answer as to the effects of certain provisions. *See, e.g.*, ROA.783-784, 792-798, 808-809, 812-816, 846-858, 870, 881-884, 900-901, 947-948. For example, asked what event would trigger the TEA to review and revise ratings, Defendants' counsel responded: "I haven't thought that through yet." ROA.711, 814. Asked if there is no appeal from the TEA's review and revision of ratings, Defendants' counsel stated: "I believe that's correct, your Honor. I haven't thought that through, but I do believe that is correct." ROA.711, 793. Asked how

---

[14] For example, as noted by the District Court, HB 900 applies to Windham School District, part of the Texas Department of Criminal Justice, which provides educational services to inmates (ROA.745) and has accepted and cataloged more than 28,000 donated books in the 2022 School Year alone. The law does not specify who would rate these donated books.

booksellers may seek relief under the law if vendors were harmed, Defendants'
counsel responded: "Well, your Honor, maybe the answer is they can't." ROA.711,
791:9-10.

### C.  **HB 900 is an unconstitutional prior restraint.**

#### 1.  **HB 900 prohibits the distribution of constitutionally protected works without procedural safeguards.**

The District Court correctly held that HB 900 is an unconstitutional prior
restraint because it grants the government unbridled discretion, without judicial
oversight, to prohibit all *future* sales of books to schools with no opportunity to
appeal final determinations or have them reviewed judicially. ROA.748-753;
*Alexander v. United States*, 509 U.S. 544, 550 (1993) (prior restraints forbid
communications "in advance of the time that such communications are to occur").

 Once the TEA decides that a book should be rated "sexually explicit," all future
distribution of that book to school districts is prohibited under HB 900. *See Chiu v.
Plano ISD*, 339 F.3d 273, 280 (5th Cir. 2003) ("The prohibition of distributing
literature is a classic form of a prior restraint."). A prior restraint on speech before it
is published, such as HB 900, is "the most serious and the least tolerable
infringement on First Amendment rights" and faces a "'heavy presumption' against
[its] constitutional validity." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558-59
(1976).

Because HB 900 does not consider whether books have literary, artistic, political or scientific value, as required by the *Miller/Ginsberg* test, it sweeps a wide swath of constitutionally protected works within its definition of "sexually explicit material." ROA.749; *see Ginsberg v. State of N. Y.*, 390 U.S. 629 (1968), *modified by Miller v. California,* 413 U.S. 15, 24 (1973); *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 476 (5th Cir. 1980), *aff'd*, 452 U.S. 89 (1981) (a prior restraint cannot be upheld if "reasonable alternatives are available having a lesser impact on First Amendment freedoms").

HB 900 also improperly provides no due process or ability to challenge the State's final determinations. Booksellers have no opportunity to contest the State's "corrected" ratings or decision to ban them from selling books to public schools before TEA or any other state agency, let alone a judicial body. *See Freedman v. State of Md.*, 380 U.S. 51, 58 (1965) ("[O]nly a procedure requiring a judicial determination suffices to impose a valid final restraint."). Without a judicial determination that the books can be lawfully banned, the statute violates the First Amendment. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). "Once a system has been deemed to be a prior restraint, it is a 'settled rule' that the system must include certain procedural protections to be constitutional." ROA.748.

Defendants' claims that a prior restraint is proper if it serves an important purpose or protects a vulnerable audience (Br. at 38) flies in the face of established

48

law that "a prior restraint may be justified only if the expression sought to be restrained surely (will) result in direct, immediate, and irreparable damage." *Bernard*, 619 F.2d at 473 (5th Cir. 1980) (internal quotations omitted).

> **2.    HB 900 is an unconstitutional prior restraint under *Bantam Books* and *Southeastern Promotions, Ltd.***

*Bantam Books, Inc. v. Sullivan*, a case never addressed by Defendants (ROA.749.), is directly on point and dictates that HB 900 is an impermissible prior restraint. 372 U.S. 58 (1963); ROA.749-753. There, the U.S. Supreme Court struck down a Rhode Island law that established a Commission that reviewed and rated certain books as "objectionable for sale, distribution or display to youths under 18 years of age." ROA.750. The Supreme Court found that this scheme, in which distributors stopped selling the "suspect" publications in response, was an unconstitutional "system of prior administrative restraints" because it (1) suppressed the distribution of non-obscene, constitutionally protected books (2) without a judicial determination that the content could lawfully be banned. ROA.750.

Both elements are found in HB 900. First, HB 900 would impede constitutionally protected works because it ignores whether books have literary, artistic, political or scientific value under *Miller*, and like the law in *Bantam Books*, it would cause Plaintiffs to stop selling books deemed too objectionable for minors. ROA.752-753. Second, HB 900 includes no judicial determination that "sexually explicit" content cannot be lawfully sold to public schools. ROA.752.

*Se. Promotions, Ltd. v. Conrad* is also instructive. 420 U.S. 546 (1975); ROA.749-753. There, the U.S. Supreme Court held that a city's denial of a public auditorium to stage a possibly obscene musical was an unconstitutional prior restraint because it "gave public officials the power to deny use of a forum in advance of actual expression," even if alternative theaters were available. ROA.750. Thus, HB 900 is constitutionally infirm, regardless of whether books can be distributed to other channels. ROA.750, 753.

## III.   Defendants' attempts to circumvent First Amendment protections are unavailing.

### A.    The government speech doctrine does not apply.

The District Court correctly determined that the government speech doctrine does not apply because HB 900 compels speech from private parties. ROA.727-730. The ratings required are "pure speech" that are protected under the First Amendment because they "communicate ideas"—whether a book contains sexual content. *See 303 Creative*, 600 U.S. at 587. Defendants misstate or misapply the *Shurtleff* factors, which show that the government speech doctrine does not apply. Br. at 34-37; *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243 (2022).

*First*, Defendants point to the history of product labeling in other markets, such as movies and video games. Br. at 35. But these rating systems are entirely

*voluntary*;[15] there is no legal requirement that anyone submit their works for such ratings. In fact, the relevant history—that of *book* ratings—favors Plaintiffs. Courts have repeatedly struck down government-imposed rating regimes for books. *See, e.g., Bantam Books, Inc*., 372 U.S. at 71 (delegation of government authority to Commission to rate books was unconstitutional). Indeed, Defendants do not point to any current rating regime that applies to books; thus, the public would not assume that such a rating system for expressive works was mandated by the government.

*Second*, because the statute requires TEA to "post each list submitted [by a bookseller] … in a conspicuous place on the agency's Internet website" (ROA.129; § 35.002(e)), the public is likely to attribute each rating to the bookseller itself. The statute is clear that TEA is posting lists submitted by each bookseller, not a list of the State's collective ratings. ROA.129; § 35.002(e). A consumer viewing the TEA's websites or searching the internet for a particular bookseller and a particular book (e.g., a search for BookPeople + *The Color Purple*) will be able to see and compare each bookseller's list of ratings, which will show how that specific bookseller "rated" a particular book. The public will not know whether a bookseller opposed doing the ratings or whether a particular rating was imposed by Defendants after the

---

[15] *See* Douglas Dow, *Motion Picture Ratings*, MTSU: FREE SPEECH CTR. (Jan. 1, 2009) ("The ratings system is voluntary, and there is no legal requirement that filmmakers submit their films for rating."); *Frequently Asked Questions*, ENTERTAINMENT SOFTWARE RATINGS BOARD (the ESRB rating system for video games is voluntary).

initial ratings. ROA.13-31; § 35.003. Thus, the public will inherently misidentify these compelled ratings as the organic speech of Plaintiffs, not the government.

*Third*, Defendants assert that "the speech actually is that of the government." Br. at 36. This belies the text of HB 900, which devises an elaborate rating-and-posting system to compel and broadcast the speech of private parties, rather than issue blanket government ratings. If TEA declines to review a bookseller's list, "the only government action involved would be limited to placing an unedited list, prepared exclusively by the vendors, online." ROA.729. The act of rating books is not a "purely ministerial task." Br. at 36; *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999) (a ministerial act is an act "[w]here the law prescribes and defines the duties to be performed with such *precision* and *certainty* as to leave nothing to the exercise of *discretion* or judgment.") (emphasis added). Rather, the statute calls for booksellers to undergo a highly subjective, fact-intensive process of "weigh[ing] and balance[ing]" factors to rate books that is neither precise nor certain and leaves plenty of discretion. *See* § II.B. above. Under the *Shurtleff* factors, the ratings are not government speech.

Finally, the ratings are not akin to objective product labels. Br. at 35-36, 43-44. At the outset, this argument is waived because it was not argued in the District Court. *See Sindhi v. Raina*, 905 F.3d 327, 333 (5th Cir. 2018) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on

appeal."). But even if not waived, the argument fails because the complex and abstract determinations demanded by HB 900 are a far cry from the factual, objective information provided on nutrition labels. To assign even a *single* rating for each book, the bookseller must review each passage and undertake a multi-part "contextual analysis" that requires it to "weigh and balance" a multitude of factors while considering (undefined) "community standards" but not accounting for age differences of the readers. *See* § II.B. above; § 35.0021(b).

**B.    The misplaced public forum analysis does not apply to speech by private individuals and entities outside of the school setting.**

The public forum analysis has no role in this case because Plaintiffs do not seek to speak in a government owned or controlled space. ROA.730. Plaintiffs must rate books at their own place of business using their own personnel at their own cost. Plaintiffs assert "a right to be free from compelled speech and a right to offer and distribute books without unconstitutionally vague censorship," *not* "an absolute right to having all or even any of their books reach shelves of public-school libraries in Texas." ROA.731. Cases that concern the ability of schools to limit *student* speech in *school-related* activities (Br. at 13) are "not instructive" because HB 900 restricts the activities of *private* booksellers, such as Plaintiffs, *outside* the school setting. ROA.731.

### C.    The commercial speech doctrine does not apply.

#### 1.    The "essential operation of government" doctrine does not apply.

The "essential operation of government" exception is inapplicable because none of the "tiny sliver of government operations" deemed essential—the registration of sex offenders, the filing of taxes, and the completion of the federal census—apply when Plaintiffs are "being asked to disseminate publicly a message with which they disagree." ROA.740-741; *see, e.g., United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014). HB 900 requires booksellers to "perform contextual analysis regarding the content of books and make judgments about the sexual nature and value of literature generally," which is a far cry from the cases in which individuals were asked to provide "simple factual or demographic information." ROA.740-741.

#### 2.    Plaintiffs' speech is not commercial.

Defendants' commercial speech argument similarly fails because economic interests do not render speech commercial. *See, e.g.*, *303 Creative*, 600 U.S. at 594 (for-profit websites were entitled to First Amendment protection; speakers do not "shed their First Amendment protections by employing the corporate form to disseminate their speech"); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952)

("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment.").

*Zauderer v. Off. of Disciplinary Counsel of Supreme Court of Ohio* does not apply because the ratings are not "purely factual and uncontroversial," and Plaintiffs are not advertisers. 471 U.S. 626, 651 (1985). Instead, while making a *single* rating for one book, the bookseller must review each passage and undertake a multi-part "contextual analysis" that requires it to "weigh and balance" a multitude of factors in deciding whether a book should be rated as "sexually explicit" or "sexually relevant," which determines if a book is available in public schools. This analysis is not based on objective facts but one's subjective beliefs and is controversial because of the immense public debate regarding the availability of books to students.

## IV. **The District Court correctly held that Plaintiffs will suffer irreparable constitutional, economic, and reputational injuries unless HB 900 is enjoined.**

Far from abusing its discretion, the District Court relied on well-settled law and issued a preliminary injunction to protect Plaintiffs from a variety of injuries that would occur if HB 900 is allowed to take effect. ROA.753-756. As explained more fully in § I.A.1. above, Plaintiffs will suffer irreparable constitutional, economic, and reputational injuries unless HB 900 is enjoined.

Plaintiffs would face violations of their First Amendment rights because HB 900 unconstitutionally compels speech, is vague, and functions as a prior restraint. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Opulent Life Church*, 697 F.3d at 295 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

Plaintiffs will also incur ongoing, non-recoverable economic injuries from trying to comply with the burdensome Rating Requirements. As explained above, *see* § I.A.1.b., forcing Plaintiffs to determine which books are in "active use," which books are not "related to the curriculum," and which ratings should be assigned to each books—for *every* book they have *ever* sold to a school district—will result in "astronomical" expense. ROA.755. Blue Willow has estimated initial compliance costs between $4 million and $500 million. ROA.145. With annual sales of just over $1 million, the exercise will put Blue Willow out of business. ROA.145 ¶ 16. The Educational Book and Media Association estimated that reviewing just 500 books would cost $93,750 and for booksellers that have sold 50,000 books, the review would require 250,000 employee hours and cost at least $9.375 million. ROA.650. Fifty-thousand books is a small fraction of the collection in many district libraries; the largest six school districts in Texas have more than six million books in their

collections. ROA.365. These compliance costs are "non-recoverable," even if HB 900 is struck down. ROA.754-755 (key inquiry to irreparable harm analysis is compliance costs' recoverability). Plaintiffs will further suffer reputational harm regardless of whether they comply with HB 900. ROA.753-754; *Daniels Health Scis., L.L.C.*, 710 F.3d at 585 (affirming injunction because reputational harm would constitute irreparable injury).

The State's assertion that Plaintiffs "will suffer no cognizable, irreparable harm" because there are still five months until the April 1 deadline to submit ratings (Br. at 45) fails to account for the extraordinary start-up costs of preparing and submitting those ratings—a process that must begin urgently for Plaintiffs to comply by the deadline. The suggestion that there is no penalty for "failing to capture specific titles in [the] initial ratings" (Br. at 45) ignores the enormous costs that must be incurred by Plaintiffs if the law is permitted to take effect.

## V.    **The District Court correctly held that the balance of equities and public interest weigh heavily in favor of enjoining an unconstitutional law.**

As the District Court rightly found, the balance of equities and public interest also support enjoining HB 900. Defendants argue that enjoining HB 900 will "deny[] the public interest in the enforcement of its law" (Br. at 45), but enjoining an unconstitutional law is "always in the public interest." *Opulent Life Church*, 697 F.3d at 298. ("[I]njunctions protecting First Amendment freedoms are always in the

public interest.") As a result, Defendants—and the public—have no interest in the enforcement of an unconstitutional law.

Whether the State has a responsibility to educate its citizens (Br. at 46) is not at issue in this case. Instead, this case is about whether the State can require third parties to review and rate books. As the District Court noted, "children will continue to be educated [and] will continue to be protected, as they have been since the start of public education in Texas, even as the injunction goes into effect." ROA.757.

## VI.   This Court should deny the Emergency Motion to Stay and lift the administrative stay while it decides this appeal to maintain the status quo.

Finally, as explained fully in Plaintiffs' Response in Opposition to the Emergency Motion to Stay (Dkt. 41), Plaintiffs request that the preliminary injunction, which narrowly addresses the requirement for Plaintiffs to rate books, take effect while this Court decides this appeal so that the law as it existed before HB 900's enactment remains in place until the constitutionality of those provisions can be decided. *See Barber v. Bryant*, 833 F.3d 510, 511–12 (5th Cir. 2016) (preliminary injunction "maintain[ed] the status quo in Mississippi as it existed before the Legislature's passage and attempted enactment of [the law]"). By contrast, allowing HB 900 to take effect would upend the status quo and cause unnecessary compliance costs and irreparable harms to fundamental First Amendment freedoms. *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 671

(2004) (a law should be enjoined when there is the risk of self-censorship and "a serious chill upon protected speech").

## CONCLUSION

This Court should affirm the District Court's well-reasoned Order enjoining HB 900 because the statute is clearly unconstitutional and allowing the law to take effect would irreparably injure Plaintiffs and the public. Denying preliminary injunctive relief will force Plaintiffs to incur astronomical compliance costs—which cannot be recovered—and, worse, compel them to "utter what is not in [their] mind." *303 Creative*, 600 U.S. at 596. This Court should uphold the paramount First Amendment principle—recognized repeatedly by the Supreme Court—that "one who chooses to speak may also decide 'what not to say.'" *Hurley*, 515 U.S. at 573. Plaintiffs respectfully request that the Court lift the administrative stay, deny the Emergency Motion to Stay, and affirm the preliminary injunction and denial of the Motion to Dismiss.

Dated: November 13, 2023

Respectfully submitted,

*/s/ Laura Lee Prather*

Laura Lee Prather
Texas Bar No. 16234200
laura.prather@haynesboone.com
Catherine L. Robb
Texas Bar No. 24007924
catherine.robb@haynesboone.com
Michael J. Lambert
Texas Bar No. 24128020
michael.lambert@haynesboone.com
William Reid Pillifant
Texas Bar No. 24126157
reid.pillifant@haynesboone.com

**HAYNES AND BOONE, LLP**
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR
PLAINTIFFS-APPELLEES**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2023, I electronically transmitted the attached document to the Clerk of the Court of the 5th Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Laura Lee Prather*
Laura Lee Prather
Attorney for Plaintiffs-Appellees

## **ECF CERTIFICATION**

I hereby certify that (i) required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; (iii) the document has been scanned for viruses using the most recent version of Windows Defender and is free of viruses; and (iv) the paper document will be maintained for three years after the mandate or order closing the case issues, pursuant to 5th Cir. R. 25.2.9.

Dated: November 13, 2023

*/s/ Laura Lee Prather*
Laura Lee Prather
Attorney for Plaintiffs-Appellees

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that:

1.      This response complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,978 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.2.

2.      This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: November 13, 2023

*/s/ Laura Lee Prather*
Laura Lee Prather
Attorney for Plaintiffs-Appellees