No. 23-50668

# In the United States Court of Appeals for the Fifth Circuit

---

Book People, Incorporated, VBK, Incorporated, doing business as Blue Willow Bookshop; Association of American Publishers; Authors Guild, Incorporated; Comic Book Legal Defense Fund; American Booksellers Association,

*Plaintiffs-Appellees*

*v.*

Martha Wong, in her official capacity as the Chair of the Texas State Library and Archives Commission; Kevin Ellis, in his official capacity the Chair of the Texas State Board of Education; Mike Morath, in his official capacity as the Commissioner of the Texas Education Agency,

*Defendants-Appellants*

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

---

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

---

*(Counsel Listed on Inside Cover)*

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General


Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Kateland R. Jackson
Assistant Solicitor General

Benjamin E. Prengler
Coy Allen Westbrook
Assistant Attorneys General

Counsel for Defendants-Appellants

# Table of Contents

Page

Table of Authorities ................................................................................................. ii

Introduction ........................................................................................................... 1

Argument ................................................................................................................ 2

    I.   This Court Lacks Jurisdiction Because Plaintiffs Have Admitted There Is No Credible Threat of Imminent Enforcement ............................ 2

        A.  Plaintiffs fail to establish standing. ...................................................... 2

        B.  Plaintiffs fail to allege ripe claims. ...................................................... 8

        C.  Plaintiffs' claims are barred by sovereign immunity. ........................... 9

    II.  Plaintiffs Allege No Plausible First Amendment Violation ...................... 10

        A.  READER does not compel protected private speech ......................... 10

        B.  READER is not unconstitutionally vague. ......................................... 18

        C.  READER is not an unconstitutional prior restraint. ........................... 20

Conclusion ............................................................................................................ 23

Certificate of Service ........................................................................................... 25

Certificate of Compliance .................................................................................... 25

# Table of Authorities

Page(s)

**Cases:**

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ......................................................................... 15-16

*Abdullah v. Paxton,*
  65 F.4th 204 (5th Cir. 2023) (per curiam), *cert. denied,* No. 23-39,
  2023 WL 6378509 (U.S. Oct. 2, 2023) ................................................ 4

*Airline Professionals Ass'n of Int'l Broth. of Teamsters, Local Union No.*
  *1224, AFL-CIO v. Airborne, Inc.,*
  332 F.3d 983 (6th Cir. 2003) ........................................................... 3-4

*Alexander v. United States,*
  509 U.S. 544 (1993) ........................................................................... 21

*Am. Meat Inst. v. U.S. Dep't of Agric.,*
  760 F.3d 18 (D.C. Cir. 2014) (en banc) ............................................. 12

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963) ........................................................................ 22-23

*Barbier v. Connolly,*
  113 U.S. 27 (1884) ............................................................................. 11

*Bennett v. Spear,*
  520 U.S. 154 (1997) ............................................................................. 4

*Bethel Sch. Dist. No. 403 v. Fraser,*
  478 U.S. 675 (1986) ........................................................................... 21

*Board of Education v. Pico,*
  457 U.S. 853 (1982) ............................................................................. 1

*Boyce Motor Lines v. United States,*
  342 U.S. 337 (1952) ........................................................................... 18

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ......................................................................... 4, 5

*CTIA-The Wireless Ass'n v. City of Berkeley,*
  928 F.3d 832 (9th Cir. 2019) ......................................................... 12, 13

*Davidson v. Fairchild Controls Corp.,*
  882 F.3d 180 (5th Cir. 2018) ............................................................. 17

*Dobbs v. Jackson Women's Health Org.,*
  142 S. Ct. 2228 (2022) ......................................................................... 6

*Doe I v. Landry,*
909 F.3d 99 (5th Cir. 2018) ................................................................ 18

*EEOC v. FLRA,*
476 U.S. 19 (1986) (per curiam) ......................................................... 15

*Everson v. Bd. of Educ. of Ewing Twp.,*
330 U.S. 1 (1947) ................................................................................ 11

*Ferrell v. Dall. Indep. Sch. Dist.,*
392 F.2d 697 (5th Cir. 1968) (Godbold, J., specially concurring) ..................... 22

*Freedom From Religion Foundation v. Abbott,*
955 F.3d 417 (2020) ....................................................................... 21, 23

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ............................................................................. 8

*Gerber Products Co. v. Perdue,*
254 F. Supp. 3d 74 (D.D.C. 2017) ........................................................ 3

*Gerron v. State,*
524 S.W.3d 308 (Tex. App.—Waco 2016, no pet.) .................................. 19

*Ginsberg v. New York,*
390 U.S. 629 (1968) ...................................................................... 11, 14

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council
of Balt.,*
721 F.3d 264 (4th Cir. 2013) (en banc) ............................................... 12

*Hunt v. Wash. State Apple Advertising Comm'n,*
432 U.S. 333 (1977) ............................................................................. 8

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish,*
849 F.3d 615 (5th Cir. 2017) .............................................................. 10

*Johanns v. Livestock Mktg. Ass'n,*
544 U.S. 550 (2005) ....................................................................... 12-13

*June Med. Servs. LLC v. Russo,*
140 S. Ct. 2103 (2020) ........................................................................ 6

*Kolender v. Lawson,*
461 U.S. 352 (1983) ........................................................................... 18

*Kowalski v. Tesmer,*
543 U.S. 125 (2004) ............................................................................. 7

*Kucinich v. Tex. Democratic Party,*
563 F.3d 161 (5th Cir. 2009) .............................................................. 18

*LeMaire v. La. Dep't of Transp. & Dev.*,
   480 F.3d 383 (5th Cir. 2007) .............................................................. 14

*Louisiana v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ................................................................ 6

*Louisiana v. Haaland*,
   2023 WL 7544505 (Nov. 14, 2023) ................................................. 4, 5

*McMahon v. Fenves*,
   946 F.3d 266 (5th Cir. 2020) .................................................................. 3

*Miller v. California*,
   413 U.S. 15 (1973) ................................................................................ 20

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) .................................................................... 1, 14, 20

*Nat'l Press Photographers Ass'n v. McCraw*,
   84 F.4th 632 (5th Cir. 2023) ................................................................... 1

*Nat'l Treasury Employees Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) ............................................................. 8

*NetChoice, L.L.C. v. Paxton*,
   49 F.4th 439 (5th Cir. 2022), *cert. granted in part on other grounds*,
   No. 22-555, 2023 WL 6319650 (U.S. Sept. 29, 2023) ...................... 7, 9

*New York v. Ferber*,
   458 U.S. 747 (1982) ............................................................................ 9, 19

*Oles v. City of New York*,
   No. 22-1620-CV, 2023 WL 3263620 (2d Cir. May 5, 2023) ............ 12

*Perry v. Sindermann*,
   408 U.S. 593 (1972) .............................................................................. 17

*Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*,
   692 F.3d 343 (5th Cir. 2012) ............................................................... 17

*Plyler v. Doe*,
   457 U.S. 202 (1982) .............................................................................. 13

*PruneYard Shopping Ctr. v. Robins*,
   447 U.S. 74 (1980) ................................................................................ 16

*R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*,
   810 F.3d 827 (D.C. Cir. 2016) ............................................................... 3

*Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*,
   80 F. Supp. 3d 730 (M.D. La. 2015) ..................................................... 9

iv

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ............................................................. 18

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ...........................................................................17

*Sable Commc'ns of Cal., Inc. v. FCC*,
    492 U.S. 115 (1989) ........................................................................... 14

*Sabri v. United States*,
    541 U.S. 600 (2004) ........................................................................... 20

*Sch. Dist. of Abington Twp. v. Schempp*,
    374 U.S. 203 (1963) (Brennan, J., concurring) ...................................13

*Shanley v. Ne. Indep. Sch. Dist.*,
    462 F.2d 960 (5th Cir. 1972) ............................................................. 21

*Shurtleff v. City of Bos., Mass.*,
    142 S. Ct. 1583 (2022) .......................................................................15

*Simon v. E. Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976) ............................................................................... 4

*Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home*,
    655 F. App'x 235 (5th Cir. 2016) ...................................................... 22

*Smith v. Vill. of Downers Grove*,
    No. 18-CV-05649, 2020 WL 1491177 (N.D. Ill. Mar. 26, 2020) ......................... 8

*Southeastern Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975) ................................................................... 22-23

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ...............................................................7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................. 2

*Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    No. 6:23-CV-00013, 2023 WL 7116844 (S.D. Tex. Oct. 27, 2023) ..................... 6

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) .............................................................. 6

*Texas v. United States*,
    523 U.S. 296 (1998) ............................................................................. 9

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ............................................................................. 8

*United States v. Abbott*,
    85 F.4th 328 (5th Cir. 2023) ............................................................. 10

v

*United States v. Am. Library Ass'n, Inc.*,
   539 U.S. 194 (2003)................................................................1, 14
*United States v. Arnold*,
   740 F.3d 1032 (5th Cir. 2014) ......................................13-14
*United States v. Raines*,
   362 U.S. 17 (1960) ............................................................ 20
*United States v. Sindel*,
   53 F.3d 874 (8th Cir. 1995)............................................13
*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ......................................................... 20
*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021) .......................................................... 10
*Winter v. NRDC*,
   555 U.S. 7 (2008) ............................................................. 2
*Wooley v. Maynard*,
   430 U.S. 705 (1977) ..............................................13, 15, 16
*Ex parte Young*,
   209 U.S. 123 (1908)......................................................... 10
*Younger v. Harris*,
   401 U.S. 37 (1971) ........................................................... 10
*Zauderer v. Off. of Disciplinary Counsel of Superior Ct. of Ohio*,
   471 U.S. 626 (1985) ...................................................11-15
*Zivotofsky v. Kerry*,
   135 S. Ct. 2076 (2015) (Thomas, J., concurring)................15

**Constitutional Provisions, Statutes:**
Tex. Const. art. vii, § 1...................................................13
Tex. Educ. Code
   § 28.002(a) ..................................................................... 18
   § 33.021(a) ..................................................................18-19
   § 35.001........................................................................... 3
   § 35.002(e) ..................................................................... 12
   § 35.003 ......................................................................... 12
   § 35.003(b) .....................................................................16
   § 35.003(c) ..................................................................... 12

Tex. Penal Code

   § 43.21 ...................................................................................... 19

   § 43.21(a)(4) ............................................................................ 19

   § 43.25 ...................................................................................... 19

   § 43.25(a)(2) ............................................................................ 19

**Other Authorities:**

Erwin Chemerinsky, *Federal Jurisdiction* § 2.4 (6th ed.2012) ............................. 8-9

Pew Research Center, *Part 2: What people do at libraries and library websites* (Jan. 22, 2013), https://www.pewresearch.org/internet/2013/01/22/part-2-what-people-do-at-libraries-and-library-websites/ ................................................. 18-19

Sabrina S. Adler et. al., *You Want a Warning with That? Sugar-Sweetened Beverages, Safety Warnings, and the Constitution*, 71 Food & Drug L.J. 482, 497 (2016) ............................................................... 13

## Introduction

Plaintiffs concede (at 2, 18) that READER's rating system is not about freedom of expression at all: it is a ministerial "task" that is consistent with the State's goals of "protecting children from obscene content in schools" and preserving parental rights. That should be the end of the matter. It is blackletter law that "only conduct that is 'inherently expressive' is entitled to First Amendment protection." *Nat'l Press Photographers Ass'n v. McCraw*, 84 F.4th 632, 648 (5th Cir. 2023). Moreover, speaking generally, the First Amendment is not offended when the government makes "content-based judgments in deciding what private speech to make available to the public" at taxpayer expense. *United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 195, (2003) (citing *inter alia Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 581-82 (1998)). And the Supreme Court has specifically "acknowledged that the school board has the authority to remove books that are vulgar." *Board of Education v. Pico*, 457 U.S. 853, 871-72 (1982) (plurality opinion).

Nevertheless, Plaintiffs argue that Defendants have violated their First Amendment free speech rights. There are three fatal flaws in Plaintiffs' argument. *First*, Plaintiffs have not established a justiciable claim under the First Amendment because they fail to allege a present injury-in-fact or a ripe claim. *Second*, Plaintiffs have not established a route around sovereign immunity that allows them to sue the State officials they selected as Defendants. *Finally*, Plaintiffs have not plausibly alleged that READER violates the First Amendment for any of the three reasons they identify. READER does not compel private parties to speak or restrain them from speaking; at most, it requires third-party vendors to provide information to State

officials to allow the government to speak. READER is not unconstitutionally vague—far from it. The statute directly ties the terms "sexually explicit" and "sexually relevant" to existing Penal Code and case law definitions. And READER does not prevent third-party vendors from speaking—only from selling books to school libraries without providing information to those libraries about their content.

Because Plaintiffs have failed to establish that their claims under the First Amendment are justiciable—let alone plausible and likely to succeed—this Court should reverse the preliminary injunction and remand with instructions to dismiss Plaintiffs' claims.[1] The Court should maintain the administrative stay or grant a full stay while it considers the issue.

## ARGUMENT

## I.  This Court Lacks Jurisdiction Because Plaintiffs Have Admitted There Is No Credible Threat of Imminent Enforcement.

### A.  Plaintiffs fail to establish standing.

Plaintiffs fail to "clearly allege facts demonstrating each element" of standing, including the most basic: a cognizable injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Plaintiffs' alleged constitutional injury is simply that they "disagree" with READER and do not want to implement the law. *See* Appellees' Br. 1, 6, 16-17, 21-22, 32, 35-40 (repeatedly characterizing their constitutional challenge as a disagreement). But Plaintiffs' "passion, however

---

[1] Without repeating arguments in their opening brief (at 31-46), Defendants maintain that Plaintiffs have not shown a substantial likelihood of success on the merits and therefore fail to satisfy the elements of a preliminary injunction. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008).

sincere, does not place [them] among the injured." *McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020). And "a generalized psychological injury" is "not a particularized free-speech one." *Id.* Plaintiffs cannot satisfy their burden to establish standing because they have failed to adequately allege that they *will* disagree with the Agency about any particular book—let alone that they will be harmed by any initial or updated rating. Plaintiffs put forth five arguments to get around these deficiencies, but each lacks merit.

*First*, as in the district court, Plaintiffs point (at 24) to Katy ISD's decision to allegedly pause book purchases pending issuance of the Board's guidance on the library collection standards. Yet even by Plaintiffs' own admission, it did not do so based on the text of READER itself but instead based on "the uncertainty surrounding the [new law]." ROA.147. Uncertainty surrounding READER could be attributable to several factors, including the existence of this lawsuit (which Plaintiffs initiated), the fact that the Board has been charged with issuing rules on a variety of topics (which include but are not limited to the issues challenged by Plaintiffs, Tex. Educ. Code §§ 35.001 *et seq.*), or Katy ISD's internal process of implementing the law and regulations (which has no perceptible connection to Plaintiffs at all). Because "uncertainties regarding the future regulatory and competitive environment are highly nebulous in both character and degree," they are generally understood not to "satisfy the injury-in-fact requirement." *Gerber Products Co. v. Perdue*, 254 F. Supp. 3d 74, 81 (D.D.C. 2017) (cleaned up); *see also, e.g.*, *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 810 F.3d 827, 830 (D.C. Cir. 2016); *Airline Professionals Ass'n of Int'l Broth. of Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc.*, 332 F.3d

983, 988 (6th Cir. 2003). Moreover, Katy ISD's decision to temporarily pause book purchases from any seller is certainly not required or enforced by READER or Defendants, but "results from the independent action of some third party not before the court"—namely decisionmakers in Katy. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42, (1976). As a result, even if the mere existence of uncertainty were a cognizable injury, Plaintiffs cannot show the remaining elements of standing: traceability and redressability. *E.g.*, *Bennett v. Spear*, 520 U.S. 154, 167 (1997).[2]

*Second*, Plaintiffs generally assert (at 19-25) that they can establish standing by baldly claiming that they "*will* suffer" reputational, constitutional, and economic injuries. But it is blackletter law that an injury is only sufficient to satisfy Article III if it is "concrete, particularized, and actual *or imminent*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis added); *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023) (per curiam), *cert. denied*, No. 23-39, 2023 WL 6378509 (U.S. Oct. 2, 2023). Though recognizing that "imminence is concededly a somewhat elastic concept," the Supreme Court "has repeatedly reiterated that a "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper*, 568 U.S. at 409 (quotation marks omitted). A "theory of standing which relies on a highly attenuated chain of possibilities does not satisfy the certainly-impending requirement." *Louisiana v. Haaland*, 2023 WL 7544505, at *1 (Nov. 14, 2023) (quoting *Clapper*, 568 U.S. at 410) (quotation marks omitted). Speculations about

---

[2] Plaintiffs have also failed to demonstrate the remaining elements of standing for the reasons stated in Defendants' opening brief (at 26-28). Defendants will not burden the court by repeating them here.

"*possible* future injury are not sufficient." *Id.* (quotation marks omitted). Yet speculation is all Plaintiffs have.

For example, Plaintiffs argue (at 22-23) they *will* suffer constitutional harm *if* they attempt to sell books that require a rating of "sexually explicit" or "sexually relevant" to a public school district, *and if* they fail to assign a rating for those materials, *and if* they disagree with the State's assigned rating, *and if* the Agency publishes the ratings for a particular book on its website and associates particular ratings with particular vendors (none of which the Agency is required to do under the law). As Defendants explained (at 16), there are at least *eleven* steps that must occur before Plaintiffs' alleged "compelled speech" injury might arise. "This sequence of events" is the speculative sort "that *Clapper* and progeny have rejected as insufficient to show injury in fact." *Louisiana*, 2023 WL 7544505, at *2. Absent sufficient allegations that each of those speculative steps is likely to occur, "the causal chain of events necessary to support [Plaintiffs'] theory of standing is so attenuated that the alleged harm is not 'certainly impending.'" *Id.* Plaintiffs have not pointed to any such allegations. For example, the "link" in the chain of contingencies that requires the Agency to identify Plaintiffs as the public-school-library vendors who sold mis-rated books is particularly attenuated because if it were easy to tell which books Plaintiffs sold, then it would hardly cost half-a-billion dollars to identify and rate them. *See Clapper*, 568 U.S. at 410.

*Third*, Plaintiffs reference (at 25-26) potential anticipated costs associated with compliance, and they conclude (at 56-57) that those costs are "non-recoverable," thereby creating irreparable harm. State Defendants do not dispute there may be

related compliance costs, "[b]ut not all compliance costs are 'nonrecoverable.'" *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022). Nonrecoverable costs must be based on more than mere speculation, and "there must be more than an unfounded fear" of such costs accruing. *Id.* (quoting *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016)). But the recoverability of costs does not hinge on a high dollar figure—"it is not so much the magnitude but the irreparability that counts." *Id.* at 1035. (quoting *Texas*, 829 F.3d at 433-34). "[T]o the extent that compliance costs are recoverable, they are not irreparable" and cannot give rise to a cognizable injury. *Id.* at 1034; *see also Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 6:23-CV-00013, 2023 WL 7116844, at *8 n.8 (S.D. Tex. Oct. 27, 2023) ("At [preliminary injunction] stage of the case, the Court agrees that [irreparable harm and injury-in-fact] are essentially two sides of the same coin.").

Here, Plaintiffs have not shown that anticipated compliance costs are nonrecoverable. Ordinary economics give rise to a presumption—which Plaintiffs have done nothing to rebut—that such costs are likely to be passed on to Plaintiffs' customers. Plaintiffs' customers may include public-school customers (in which case, the cost would be borne by the State) or non-public-school customers (in which case, the cost would be absorbed by traditional marketplace factors). Plaintiffs have failed to demonstrate that they will ultimately bear these costs. And Plaintiffs have not asserted third-party standing to sue on their customers' behalf, nor do Plaintiffs maintain the type of relationship with their customers that would allow them to do so. *E.g.*, *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2117 (2020) (plurality op.), *abrogated by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022); *see also*

*Kowalski v. Tesmer*, 543 U.S. 125, 122-26 (2004) (third-party standing requires a "close relationship between the party asserting the right and the person who possesses the right" and some impediment to that person's ability to sue on their own behalf).

*Fourth*, Plaintiffs cite (at 21) *Speech First* for the proposition that absent compelling evidence to the contrary, courts will presume that where a new law potentially impinges on a First Amendment right, "the threat of future enforcement of the challenged policies is substantial." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (cleaned up). As Defendants have already explained (Appellants' Br. 20-22), Plaintiffs do not satisfy any of the elements of this relaxed test. Far from rebutting this argument, Plaintiffs admit "it is . . . *impossible* to understand or predict how the statute will actually be implemented and enforced by the State." Appellees' Br. 46 (emphasis added). That is precisely the point, and it is the reason this Court has warned that "[i]nvalidate-the-law-now, discover-how-it-works-later judging is particularly troublesome when reviewing state laws." *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 449 (5th Cir. 2022), *cert. granted in part on other grounds*, No. 22-555, 2023 WL 6319650 (U.S. Sept. 29, 2023). Plaintiffs cannot turn this merits vice into a standing virtue because for all the Court can glean from Plaintiffs' allegation, READER may be "implemented in a manner consistent with the Constitution." *Id.* Instead, Plaintiffs bear the burden of showing the threat of future enforcement is "substantial," *Speech First*, 979 F.3d at 330, which they cannot do by throwing up their hands and declaring that the threat of future enforcement is also not even possible to predict.

*Fifth*, Plaintiffs mention in passing, in a footnote (at 19 n.8), that they may be able to rely on associational standing. For an association to have standing, the organizational plaintiffs would have to establish (among other things) that at least one member "would otherwise have standing to sue in its own right." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). But it is not even clear that the associational Plaintiffs here each have members who sell library materials to public school districts in Texas. *See, e.g.*, ROA.85-88. Even if they do, at least some of those books will presumptively reveal that "[z]ero plus zero plus zero is still zero." *Smith v. Vill. of Downers Grove*, No. 18-CV-05649, 2020 WL 1491177, at *8 (N.D. Ill. Mar. 26, 2020). And if each of the associations' members' injuries are too speculative to support Article III standing, they do not become less so because they have associated with others who also have speculative injuries.

## B.  Plaintiffs fail to allege ripe claims.

For similar reasons, because Plaintiffs' claims are "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," they are not ripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985). Appellants' Br. 14-17. "Ripeness, while often spoken of as a justiciability doctrine distinct from standing, in fact shares the constitutional requirement of standing that an injury in fact be certainly impending." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). To the extent that they differ, "[r]ipeness properly should be understood as involving the question of when a party may seek preenforcement review of a statute or regulation." Erwin Chemerinsky,

*Federal Jurisdiction* § 2.4 (6th ed.2012). There has also been some suggestion that though standing is judged at the time of the complaint, a case may subsequently ripen. *Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 732 (M.D. La. 2015) (collecting authorities). Assuming that is true, Plaintiffs have pointed to nothing that has caused the dispute to ripen since they filed their complaint.

Plaintiffs counter (at 31) that "no additional factual development is required" to invalidate READER and (at 32) that READER "causes immediate hardship on Plaintiffs by requiring them to conduct book ratings, in the first instance, and to do so using criteria with which they disagree." But as already noted, *supra* p. 5, there are at least *eleven* anticipated steps that must occur before any potential alleged constitutional injury or economic loss may arise. *See also* Appellants' Br. 16. The existence of far fewer contingencies has led to the dismissal of claims as unfit for judicial resolution. *E.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998). And they are "particularly troublesome [for federal courts] when reviewing state laws" in cases like this one where the pre-enforcement posture "deprives 'state courts [of] the opportunity to construe [the] law to avoid constitutional infirmities.'" *Netchoice L.L.C.*, 49 F.4th at 449 (quoting *New York v. Ferber*, 458 U.S. 747, 768 (1982)). Under such circumstances, federalism dictates, and the limitations of this Court's jurisdiction require, the dismissal of Plaintiffs' claims as unripe.

## C.  Plaintiffs' claims are barred by sovereign immunity.

Plaintiffs have not shown a credible threat that Defendants "are about to commence proceedings, either of a civil or criminal nature," so they have failed to show that this case falls within the narrow exception to sovereign immunity

established by *Ex parte Young*, 209 U.S. 123 (1908). *United States v. Abbott*, 85 F.4th 328, 335 (5th Cir. 2023); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 47-48 (2021) (plurality op.). Far from contesting this proposition, again Plaintiffs admit "it is … *impossible* to understand or predict how the statute will actually be implemented and enforced by the State." Appellees' Br. 46 (emphasis added). Because Plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," *Younger v. Harris*, 401 U.S. 37, 42 (1971), applying *Ex parte Young*'s exception would be "fanciful." *Abbott*, 85 F.4th at 335. Consistent with Defendants' arguments in their opening brief (at 29-31), Plaintiffs' claims against State Defendants are barred by sovereign immunity.

## II. Plaintiffs Allege No Plausible First Amendment Violation.

Aside from the jurisdictional flaws with Plaintiffs' claims, Plaintiffs response additionally fails to show a likelihood of success on any of their First Amendment claims: (1) compelled speech, (2) vagueness, and (3) that READER represents a prior restraint. Absent such a likelihood of success, the preliminary injunction cannot stand even if the equities would otherwise favor equitable relief, which they do not. *See Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish*, 849 F.3d 615, 626 (5th Cir. 2017); Appellants' Br. 31-46.

### A. READER does not compel protected private speech.

Plaintiffs insist (at 37-39) that READER compels their speech in "at least two ways": (1) it "coerces" Plaintiffs to review books and potentially assign a rating with

which they might disagree; and (2) it "force[s] Plaintiffs to allow the TEA to publish" a revised rating "as if [it] were Plaintiffs' own." Appellees' Br. 38. They are unlikely to succeed on either theory because it is blackletter law that States retain power "to prescribe regulations" such as safety warnings "to promote the health, peace, morals, education, and good order of the people." *Barbier v. Connolly*, 113 U.S. 27, 31 (1884); *see also Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 32 n.9 (1947). READER easily falls within that framework. *See* Appellants' Br. 31-32.

Indeed, over 50 years ago, the Supreme Court examined and *upheld* a statute that prohibited the sale of materials that were harmful to minors, using terms similar to those used in READER. *Ginsberg v. New York*, 390 U.S. 629 (1968). Specifically, in *Ginsberg*, the law at issue prohibited the sale of materials for "any description or representation" of "nudity, sexual conduct, sexual excitement, or sadomasochistic abuse" that "predominantly appeal[ed] to the prurient, shameful or morbid interest of minors" or that was "patently offensive to prevailing standards in the adult community as a whole with respect to what was suitable material for minors." 390 U.S. 629, 646 (1968). The Court concluded the statute was constitutional based on the State's interests in the well-being of children and in preserving the interests of parents. *Id.* at 637, 642-43.

The Court has repeatedly upheld and elaborated on that principle in the decades since. In particular, *Zauderer v. Office of Disciplinary Counsel of the Superior Court of Ohio*, which permits States to require commercial enterprises to make "purely factual and uncontroversial" disclosures regarding their products so long as they are "reasonably related to the State's interest." 471 U.S. 626 (1985). Under *Zauderer*

and its progeny, Texas may require companies to inform "purchasers about what the [government] has concluded is appropriate use of the product they are about to buy," so long as the State does not require the company to "take sides in a heated political controversy." *CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 848 (9th Cir. 2019); *see Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 21 (D.C. Cir. 2014) (en banc). Once triggered, *Zauderer* requires only rational-basis review. *Oles v. City of New York*, No. 22-1620-CV, 2023 WL 3263620, at *3 (2d Cir. May 5, 2023); *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013) (en banc).

READER's rating system easily satisfies the rational-basis test. READER, through its ratings, urges disclosure of factual information about the appropriate use of particular library materials in public schools and may truthfully identify booksellers that fail to comply with such disclosure. *See* Tex. Educ. Code § 35.003. The ratings are established and made on behalf of the State, and they appear (if anywhere) on the Agency's website. *Id.* § 35.003(c). READER does not require or compel Plaintiffs or other third-party sellers to issue ratings on their own private website or in any way associate ratings with their own private business. *Id.* § 35.002(e). There is no requirement under READER that a third-party seller ever be publicly associated with any particular rating, alleviating Plaintiffs' concerns about compelled speech by making clear that the ratings cannot be attributed to Plaintiffs. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 564 (2005).

Moreover, even if READER compels speech, an exception to the general prohibition on compelled speech exists for "essential operations" of the

government. *See United States v. Arnold*, 740 F.3d 1032, 1034-35 (5th Cir. 2014) (quoting *United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995)). Both federal and state law "have recognized 'the public schools as a most vital civic institution for the preservation of a democratic system of government.'" *Plyler v. Doe*, 457 U.S. 202, 221 (1982) (quoting *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 230 (1963) (Brennan, J., concurring)); Tex. Const. art. vii, § 1 (providing for Texas's maintenance of a "system of public free schools"). Preserving such operations are certainly no less essential than "requir[ing] sex offenders to register their residence" "to protect the public." *Arnold*, 740 F.3d at 1035.

Plaintiffs make five arguments to the contrary; none have merit. *First*, as noted above, *supra* pp. 2-3, Plaintiffs repeatedly raise disagreements with READER. That is unsurprising: most businesses "do not welcome the mandated inclusion of a disclosure or safety warning on their products," but "courts have consistently rejected the argument that a disclosure requirement should be considered controversial because businesses object to it or the public may be put off by it." Sabrina S. Adler et. al., *You Want a Warning with That? Sugar-Sweetened Beverages, Safety Warnings, and the Constitution*, 71 Food & Drug L.J. 482, 497 (2016). Such disclosures are "controversial" under *Zauderer* only when they are likely to chill protected speech or require a commercial entity to take a side in a political debate. *CTIA*, 928 F.3d at 848; *see also Arnold*, 740 F.3d at 1034 (government compels private speech by forcing affirmance of a "religious, political or ideological cause" (citing *Wooley v. Maynard*, 430 U.S. 705, 715 (1977)).

Plaintiffs' disagreement with the law, standing alone, cannot hide that READER easily satisfies the rational basis test. The State's interest in "protecting the physical and psychological well-being of minors" from this material is not just substantial but compelling. *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). And READER's effort to control what books are placed in school libraries is at least *reasonably* related to this interest in protecting children from access to such materials at school. *See Ginsberg*, 390 U.S. at 643.

*Second*, Plaintiffs appear to assert (at 39) that READER is controversial under *Zauderer* because assigning a state-made label of "sexually explicit" or "sexually relevant" to school library materials somehow "compromise[s] [Plaintiffs'] beliefs" or requires Plaintiffs to "betray their conscience." As Defendants have explained (at 43-44), however, READER does not require any third party to comment on the appropriateness of books for children. It merely requires that vendors rate their wares against state-established criteria if they wish to peddle those wares to state-funded schools. Plaintiffs can point to no authority for the notion that their beliefs entitle them to state funding to put materials in school libraries. To the contrary, governments have significant discretion over such matters. *Am. Library Ass'n, Inc.*, 539 U.S. at 195 (citing *Finley*, 524 U.S. at 581-82).

*Third*, they insist (at 52-53) that Defendants have "waived" their argument that ratings are akin to objective product labels. Not so. Defendants properly presented the issue to the district court by raising *Zauderer* in their motion to dismiss and response to the motion for preliminary injunction. ROA.264; *cf. LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). And they properly preserved

14

the argument on appeal by asserting (at 34-37) that the ratings are akin to product labels found on videogames, movies, and the like, thereby satisfying the *Shurtleff* factors that, despite Plaintiffs' assertion to the contrary (at 50), properly apply to this Court's analysis of government speech. *See Shurtleff v. City of Bos., Mass.*, 142 S. Ct. 1583, 1589-90 (2022). Defendants also asserted on appeal (at 43-44) that even if the ratings are speech, READER survives rational-basis review under *Zauderer*.[3]

*Fourth*, Plaintiffs rely (at 38-40) on two distinguishable free speech cases, *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) and *Wooley v. Maynard*, 430 U.S. 705 (1977). In *303 Creative*, the Court determined that a Colorado law, which would have required the plaintiff to create "original," "customized," and "tailored" websites using "her own expressive services" to celebrate a controversial activity to which she has a religious objection, was unconstitutional. *303 Creative*, 600 U.S. at 579, 597, 602-03. As the Court explained, the plaintiff's customized websites would be "expressive in nature, designed to communicate a particular message" of public support for a controversial topic. *Id.* at 579. The websites would also be directly attributable to the plaintiff because "the name of the company she owns and operates by herself will be displayed on every one" such that "[v]iewers will know . . . that the websites are [the plaintiff's] original artwork." *Id.* And if she were to refuse to create the websites, the plaintiff would be immediately subject to enforcement through

---

[3] To the extent that Plaintiffs assert waiver because Defendants did not cite any particular case, that is of no moment. A party "cannot waive the correct interpretation of the law simply by failing to invoke it." *Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2101 n.2 (2015) (Thomas, J., concurring) (citing *EEOC v. FLRA*, 476 U.S. 19, 23 (1986) (per curiam)).

sanctions, including "paying monetary fines." *Id*. at 581. The facts in *303 Creative* are very different than those here: READER does not require any expressive message but rather urges Plaintiffs and other school-library vendors to ministerially apply one of two state-made ratings (if applicable) to accurately depict the products they seek to sell to public schools. *See* Tex. Educ. Code § 35.003(b). Even by Plaintiffs' estimation (at 46), there is no credible threat of enforcement against Plaintiffs under READER. And it is unlikely that Plaintiffs' customers (which include its school-library customers who are directly subject to and familiar with READER) will assume the application of a rating is Plaintiffs' original speech—unlike in *303 Creative*, the ratings here will not be associated with Plaintiffs.

In *Wooley*, the Court held that a New Hampshire law requiring private citizens to display the state's license plate motto on their vehicles was a violation of the First Amendment because the law subjected citizens to criminal penalties if they failed "to participate in the dissemination of an ideological message by displaying it on [their] private property in a manner and for the express purpose that it be observed and read by the public." 430 U.S. at 710-13. Since *Wooley*, the Court has affirmed that "the dissemination of an ideological message" or "the compelled recitation of a message containing an affirmation of belief" is inconsistent with the Frist Amendment. *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 86-87, 88 (1980). Again, though, Plaintiffs are not "being compelled to affirm their belief in any governmentally prescribed position or view, and they are free to publicly dissociate themselves from" the initial and corrected ratings without fear of enforcement actions. *Id*. at 88. Therefore, *303 Creative* and *Wooley* are inapposite to this case.

16

*Fifth*, Plaintiffs invoke the "unconstitutional conditions" doctrine (at 40-42). To start, this argument is waived because Plaintiffs "failed to argue or brief it to the district court." *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 185 (5th Cir. 2018). Moreover, it is inapplicable for at least three related reasons. *First*, as Plaintiffs admit (at 37 n.11), unlike in *Perry v. Sindermann*, 408 U.S. 593 (1972), if the State chooses not to contract with Plaintiff, it could have nothing to do with speech as Plaintiffs' customers are under no obligation to do business with them. *Second*, by ignoring the other reasons the government could choose not to contract with them, Plaintiffs' view would have the doctrine reach circumstances for which it was never designed. For example, it would violate the First Amendment for the Department of Defense to condition purchasing a new billion-dollar fighter jet on receiving written assurances that the jet can fly at the speed of sound. Such a reading of the First Amendment makes no sense. And, *third*, under that doctrine as currently written, READER is permissible because "Texas's restriction on promoting" non-sexually explicit books "directly regulates the content of" school libraries "as a state program." *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 350 (5th Cir. 2012); *c.f. Rust v. Sullivan*, 500 U.S. 173, 194 (1991) ("[W]hen the Government appropriates public funds to establish a program it is entitled to define the limits of that program."). Precisely because government can place conditions on government programs, the United States can condition defense purchases on promises that the weapons will perform for their function, and Texas can condition purchase of library books on promises that the books comply with standards governing which materials belong in a school library.

## B.  READER is not unconstitutionally vague.

READER is not unconstitutionally vague because it provides "sufficient definiteness" that Plaintiffs and "ordinary people" might have "a reasonable opportunity to know what conduct is prohibited." *Doe I v. Landry*, 909 F.3d 99, 116 (5th Cir. 2018) (quoting *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 166 n.4 (5th Cir. 2009)); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). If proof of that is needed, the Court need look no further than to Plaintiffs' sixteen-step chart (at 10-12) meticulously detailing the statute's requirements and identifying specific definitions for each statutory term. Plaintiffs' four quibbles do not establish otherwise.

*First*, Plaintiffs suggest (at 42-43) that the law must be vague because there is no definition for "directly related to curriculum" and "active use" for one to determine whether a book must be rated. But READER defines curriculum by referencing the Education Code, which already defines "curriculum" to include subjects such as "English language arts," "health," and "science." *See* Tex. Educ. Code § 28.002(a); *see id.* § 33.021(a). While it is true that the definition is broad, there is a difference between breadth and ambiguity—let alone vagueness. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952); *Roark*, 522 F.3d at 552-53. Similarly, though "active use" has no statutory definition, the words are commonplace and can be given their ordinary meaning. *Boyce Motor Lines*, 342 U.S. at 340. Under that meaning, an ordinary person can easily understand that "active use" in the library context means that it is catalogued and in circulation by the library and generally available for check-out or viewing by students. *See* Pew Research Center, *Part 2:*

*What people do at libraries and library websites* (Jan. 22, 2013), https://www.pewresearch.org/internet/2013/01/22/part-2-what-people-do-at-libraries-and-library-websites/.

*Second*, Plaintiffs argue (at 43) that READER "provides no bright line" in determining whether books should be rated as "sexually explicit." But READER defines "sexually explicit material" to include "any communication, language, or material . . . that describes, depicts, or portrays sexual conduct, as defined by Section 43.25, Penal Code, in a way that is patently offensive, as defined by Section 43.21, Penal Code." Tex. Educ. Code § 33.021(a). Texas Penal Code Section 43.25(a)(2), in turn, defines "[s]exual conduct" to include "sexual contact," "actual or simulated sexual intercourse," "masturbation," and the "lewd exhibition" of intimate body parts. And Texas Penal Code Section 43.21(a)(4) explains that something is "[p]atently offensive" if it is "so offensive on its face as to affront current community standards of decency." While Plaintiffs contend (at 43) that some lawyers struggle with applying the same definitions in the Penal Code, *see* Appellees' Br. 43 (citing ROA.704), Texas courts aptly handle Section 43.25 and have already concluded that challenged parts of Section 43.25 of the Penal Code are not unconstitutionally vague. *See Gerron v. State*, 524 S.W.3d 308, 317 (Tex. App.—Waco 2016, no pet.). Similar terminology appears throughout the federal reporter and has been repeatedly held constitutional. *E.g.*, *Ferber*, 458 U.S. at 774 (holding statutes with nearly identical language constitutional).

*Third*, Plaintiffs also assert (at 44-45) that READER is vague because it provides a statewide decency standard that simultaneously treats urban and rural schools alike

and does not provide school-by-school guidance. But the Supreme Court has held that it is "constitutionally adequate" to use the "contemporary standards of the *State of California*" when creating similar regulations. *Miller v. California*, 413 U.S. 15, 33-34 (1973) (emphasis added). Although Texas is geographically bigger than California, the States both have similar urban and rural divides; if California can rely on a statewide standard, so too can Texas.

*Fourth*, Plaintiffs again insist (at 46) that READER is vague because they cannot predict how it will be implemented and enforced. But that is the problem with pre-enforcement challenges. *Supra* pp. 7-8; *Sabri v. United States*, 541 U.S. 600, 609 (2004) ("Facial adjudication carries too much promise of 'premature interpretation[] of statutes' on the basis of factually barebones records." (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)). Without more, Plaintiffs' concern does not justify the "strong medicine" of facial invalidation, which courts employ "sparingly and only as a last resort." *Finley*, 524 U.S. at 580 (internal quotation omitted). Nor does it change the fact that "perfect clarity and precise guidance" in implementing laws is not required to survive constitutional scrutiny for vagueness. *See Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

## C.  READER is not an unconstitutional prior restraint.

Finally, Plaintiffs incorrectly assert (at 47) that READER imposes a prior restraint on private, protected speech because it "prohibit[s] all *future* sales of books to schools with no opportunity to appeal final determinations or have them reviewed judicially." The term prior restraint describes "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such

communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quotation marks omitted). "Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints." *Id.* But "the government need not permit all forms of speech on property that it owns or controls." *See Freedom From Religion Foundation v. Abbott*, 955 F.3d 417, 426 (2020). Instead, "[t]he government can restrict speech in a . . . nonpublic forum as long as the restriction is (1) reasonable in light of the purpose served by the forum and (2) does not discriminate against speech on the basis of viewpoint." *Id.* at 426-27.

As discussed above, *supra* pp. 1-2, and in Defendants' opening brief (at 2, 20-21, 32-33) and even by Plaintiffs (at 47), READER merely seeks to prevent *sexually explicit materials* entering *public schools* at taxpayer expense. For half a century, this Court has recognized reasonable restrictions on speech in public schools because there are "differences between what are reasonable restraints in the classroom and what are reasonable restraints on the street corner." *Shanley v. Ne. Indep. Sch. Dist.*, 462 F.2d 960, 969 (5th Cir. 1972). Reasonable restrictions may mean that First Amendment protections are limited if "the speech is sexually explicit and the audience may include children." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986). What is more, "[t]here is nothing unconstitutional per se in a requirement" that materials be vetted for substance and content by "the school administration prior to distribution." *Shanley*, 462 F.2d at 969 (quoting *Ferrell v. Dall. Indep. Sch. Dist.*, 392 F.2d 697, 704-05 (5th Cir. 1968) (Godbold, J., specially concurring)). Here, Plaintiffs can still sell sexually explicit material to the public,

including to the parents and school children that Plaintiffs target. READER does nothing to exclude Plaintiffs' views or prevent them from distributing these exact same materials to anyone other than public-school customers—it merely prevents school districts from endorsing those materials. Thus, any speech restriction under READER is reasonable and viewpoint neutral.

In arguing to the contrary, Plaintiffs rely heavily (at 48-51) on *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), and *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975). Neither case resolves the issues before this Court, and they are both distinguishable. *Bantam* has some superficial similarities to this case in that a Rhode Island law created a commission to review and rate books. 372 U.S. at 66. But the similarities end there. Unlike here, *Bantam* involved an informal system of prior restraints in which the commission "sent numerous notices to stop the sale of certain publications, which were followed by police visits and threats of criminal prosecution." *Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. App'x 235, 240 n.6 (5th Cir. 2016) (citing *Bantam*, 372 U.S. at 68). Additionally, Rhode Island's law gave the commission broad authority "to educate the public concerning any book, picture, pamphlet, ballad, printed paper or other thing containing obscene, indecent or impure language, or manifestly tending to the corruption of the youth as defined." *Bantam*, 372 U.S. at 59-60. And it provided the commission power "to investigate and recommend the prosecution of all violations of said sections." *Id.* Unlike here, the Rhode Island law's broad mandate was not limited to the public-school context, the use of public funds, or sexually explicit material; it extended to *any* material *anywhere* tending to corrupt the morality of youth. *Id.* And Plaintiffs

here cannot point to any similar threats or other harassment creating an informal system of prior restraints that played a key role in *Bantam*.

*Southeastern Promotions* is similarly inapposite. There, the Court held that allowing a board to prohibit productions in a public theatre was a prior restraint due to the lack of procedural safeguards. 420 U.S. at 562, 555. The Court focused on the lack of safeguards because there was nothing stopping the board's roving discretion to deny applications for *any* reason. *Id.* at 555. Unlike the roving, unfettered discretion and sweeping standards in *Southeastern Promotions* that prohibited productions to *anyone* at *any* time, READER provides clear, limited guidelines to prevent sexually explicit material from entering public schools—*but only* public schools—at taxpayer expense. *See Freedom From Religion Foundation*, 955 F.3d at 426 ("the government need not permit all forms of speech on property that it owns and controls"). Under READER, vendors may continue to sell as much sexually explicit material to the public as they choose. READER is not a prior restraint in the constitutional sense.

## Conclusion

The Court should reverse the preliminary injunction and remand with instructions to dismiss Plaintiffs' claims. It should also maintain the administrative stay pending resolution of this appeal.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

/s/ Kateland R. Jackson
Kateland R. Jackson
Assistant Solicitor General

Benjamin E. Prengler
Coy Allen Westbrook
Assistant Attorneys General

Counsel for Defendants-Appellants

## Certificate of Service

On November 20, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kateland R. Jackson
Kateland R. Jackson

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,462 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kateland R. Jackson
Kateland R. Jackson